WILLIAM H. McRORIE, an Infant, by HERBERT E. McRORIE, His Guardian ad Litem, Respondent, *v.* WILLIAM H. MONROE, Appellant.

Negligence — evidence — admissions made by a party to an action, upon a previous trial thereof, may be proved by the testimony of a witness who heard them — erroneous exclusion of evidence tending to show that a wagon, by which plaintiff was injured, could not be used in the way alleged.

1. In a civil action the admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made.

2. What a witness has sworn may be given in evidence either from the judge's notes or from notes that have been taken by any other person who will swear to their accuracy; or the former evidence may be proved by any person who will swear from his memory to its having been given. There is no rule which makes the stenographic reporter the only competent witness. Hence it is error to refuse to permit proof of the testimony of a party on a former trial, by a witness who had heard it given.

3. Where an accident resulted from the manner of use of a dump wagon of peculiar and exceptional construction, the question whether the wagon could be turned in the way alleged was a material inquiry, and evidence tending to show that it could not is relevant and admissible.

*McRorie* v. *Monroe*, 138 App. Div. 917; reversed.

(Argued October 30, 1911; decided November 28, 1911.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 24, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lamont Stilwell* for appellant. The trial court committed reversible error in excluding proper and competent testimony offered by defendant. (*Hendrick* v. *State*, 10 Humph. [Tenn.] 479; *Donaldson* v. *Alexander*, 29 Misc. Rep. 356; *Reed* v. *McCord*, 18 App. Div. 381; *Cook* v. *Barr*, 44 N. Y. 156; *Patchin* v. *A. M. L. Ins. Co.*, 13 N. Y. 268; *E. F. C. Co.* v. *Comisky*, 40 Misc. Rep. 236; *Schofield* v. *Spaulding*, 54 Hun, 523; *Williams* v. *Sargent*, 46 N. Y. 481; *Nasanowitz* v. *Hanf*, 17 Misc. Rep. 157; *Dickman* v. *MacDonald*, 50 Misc. Rep. 531; *Weinhandler* v. *Eastern Brewing Co.*, 46 Misc. Rep. 584; *Crossman* v. *Lurman*, 33 App. Div. 422.)

*Theodore E. Hancock* for respondent. The exceptions to rulings on questions of evidence were frivolous in their

nature and were not well taken. (*Ferguson* v. *Hubbell,* 97 N. Y. 507; *Roberts* v. *N. Y. E. R. R. Co.,* 128 N. Y. 465; *Dougherty* v. *Milliken,* 163 N. Y. 527; *Welle* v. *Celluloid Co.,* 186 N. Y. 319; *Schwander* v. *Birge,* 46 Hun, 66; *Furst* v. *Second Ave. R. R. Co.,* 72 N. Y. 542; *Plato* v. *Reynolds,* 27 N. Y. 586; *Baptist Church* v. *B. F. Ins. Co.,* 28 N. Y. 153.)

Willard Bartlett, J. At the time of the accident which gave rise to this action, on August 8, 1907, the plaintiff was a lad six years of age, residing with his parents on Midler avenue, in East Syracuse. Early in the afternoon he was out on that street drawing a little express wagon, such as children play with. His brother, three years old, was with him. The boys were walking toward James street, down the side of the road, when a team overtook them driven by a teamster in the employment of the defendant. The horses were drawing a dump wagon. The forward wheel next to the plaintiff passed him without touching him, as he stood at the side of the roadway; but the hind wheel ran over his left foot and injured it to such an extent that three toes had to be amputated. By the verdict the boy has been absolved from all blame for this accident, and it has been attributed to the negligence of the defendant's teamster; this view has also been unanimously adopted by the Appellate Division, which has found no error in the record sufficient to disturb the judgment.

Our examination of the record has constrained us to reach a different conclusion. It seems to us clear that harmful error was committed (1) in excluding oral testimony as to what the plaintiff had testified upon a previous trial; and (2) in excluding the evidence of witnesses familiar with the mechanism and operation of the defendant's dump wagon, by reason of actual personal experience in using it, as to the possibility of turning it so sharply as to bring the hind wheel in contact with the

plaintiff in the manner by him described. The instructions to the jury in respect to the rule of responsibility applicable to the infant defendant (in the event of finding that he was *non sui juris*) were also so confused and contradictory as to be difficult of comprehension by even the most intelligent laymen.

(1) At the place of the accident an irregular ditch ran parallel with Midler avenue, being separated from the macadam roadway by a space or path two or three feet wide, along which the plaintiff was drawing his express wagon. The ditch was about eight feet wide, from one brow or shoulder to the other, and about $2\frac{8}{10}$ feet deep. According to the plaintiff's testimony upon the trial now under review, he had crossed this ditch by means of a bridge of planks which existed at the time of the accident. When the wagon came along, he said, he and his little brother went as close as they could to the ditch and stopped; conveying the idea that the character of the ditch at this point was such as to constitute a substantial obstacle against escape from the collision which subsequently occurred. It, therefore, became very important to the defendant to show if he could that the plaintiff had testified differently as to facts bearing upon the character of the ditch on the previous trial. He sought to do this by means of a witness who was present at that trial, heard the testimony which the plaintiff then gave as to the manner in which he crossed the ditch and remembered it. The learned trial judge refused to allow the defendant to prove by this witness what he heard the plaintiff testify on the former trial; and exceptions were duly taken to his rulings in this respect.

These rulings were plainly erroneous. The defendant was endeavoring to show that the plaintiff had admitted upon the previous trial a course of conduct on his part inconsistent with his contentions upon the present trial. "In a civil action the admissions by a party of any fact material to the issue are always competent evidence

against him, wherever, whenever or to whomsoever made." (*Reed* v. *McCord*, 160 N. Y. 330, 341.)

At common law, whenever it was desired to prove the testimony given upon a former trial, it was always permissible to prove it by the recollection of any person who heard it and who would undertake to narrate it correctly. In *Mayor of Doncaster* v. *Day* (3 Taunton, 262) Lord Mansfield said: "What a witness, since dead, has sworn upon a trial between the same parties, may, * * * be given in evidence, either from the judge's notes, or from notes that have been taken by any other person, who will swear to their accuracy; or the former evidence may be proved by any person who will swear from his memory to its having been given."

In *Johnson* v. *Powers* (40 Vt. 611) it was said that "former evidence may be proved by any person who will swear from his memory to its having been given."

In *McGeoch* v. *Carlson* (96 Wis. 138) it was held that a justice of the peace was competent to testify as to the evidence given before him on a former trial. In *State* v. *McDonald* (65 Maine, 466) the government, to impeach one of the defendant's witnesses, offered to show that he testified differently, at a former trial, by a witness who was present and heard him testify. The testimony was objected to on the ground that it was not the best evidence and that the legally appointed stenographer who took notes of the testimony could give better evidence. The objection was overruled and the impeaching witness allowed to testify. This action on the part of the trial court was approved by the Supreme Judicial Court of Maine, which said through Walton, J.: "A witness may be impeached by showing that he testified differently at a former trial; and his former testimony may be proved by any one who heard and recollects it. There is no rule of law which makes the stenographic reporter the only competent witness in such a case. The rule which requires the production of the best evidence is not appli-

cable. * * * It has nothing to do with the choice of witnesses. It never excludes a witness upon the ground that another is more credible or reliable."

These authorities suffice to show the general recognition of the rule which was violated by the refusal to permit proof of the plaintiff's former testimony by a witness who had heard it given.

(2) According to the plaintiff's testimony he stood about two feet and three inches from the forward wheel of the wagon when that wheel went by him; the driver kept pulling his team in so that he brought the hind wheel around where the plaintiff's foot was. It appeared from other evidence that the distance between the center of the forward wheel and the center of the hind wheel was very nearly eight feet; between seven and eight feet. A witness named Charles Kenney called for the defendant testified that he had driven the same wagon himself with the same team and that he had had experience in turning around with it and had noticed how it acted so that he was able to say how far the driver would have to turn the horses in order to bring the hind wheel two feet and a quarter outside of where the forward wheel went. Although thus qualified to speak from his own actual experience with the vehicle the learned trial judge refused to permit him to answer either of the following questions:

"Q. Assuming that that wagon was being driven south on Midler Avenue at the point where the accident occurred in order to bring the rear wheel two feet and a quarter west of where the forward wheel went in going the distance between the two wheels how far would you have to have cramped or moved your horses to the west?"

"Q. Would it be possible without running the horses into the ditch to bring the hind wheel so that it would pass two and a quarter feet west of where the forward wheel had passed?"

It will be perceived that these interrogatories related to the capacity of the vehicle to do what the evidence for the plaintiff tended to show that it had done. This was a determining issue in the case. There was no suggestion that the team had been turned so far as to get into the ditch next to which the plaintiff stood; and the evidence sought to be elicited by these questions was designed to show that the construction and practical operation of the wagon were such that the hind wheels could not have been moved as much as the plaintiff said they were moved without a greater change of the direction in which the horses were being driven. In other words, the defendant sought to show that practical experience in the use of this very wagon demonstrated the impossibility that the accident could have occurred in the manner testified to by the plaintiff.

When such an issue arises depending for its determination upon the capacity of a machine, mechanical appliance or vehicle, the testimony of witnesses having actual experience in the use thereof may be received as an aid to the jury. While it may be true in the case at bar that if all the details of the construction of the wagon were laid before the jury the jurors themselves could draw correct inferences as to its capacity to do or not to do a particular thing, nevertheless they could hardly form as trustworthy a judgment in that respect as one who spoke from actual experience in the use of the vehicle, and witnesses having such experience have been permitted in similar cases to assist the jury by narrating it. In *O'Neil v. D. D., E. B. & B. R. R. Co.* (129 N. Y. 125) a witness who had driven trucks in New York city for years was asked within what time and space a loaded truck could be stopped, and the allowance of that question was held to be no error. It is true the court said that it belonged to a class of questions not much to be encouraged inasmuch as jurors are generally well acquainted with such common things as trucks and horses and the power,

actions and capacity of horses which are constantly open to observation particularly in the city of New York. Even so, the conclusion was that the expert witness probably knew more about the subject of inquiry than ordinary jurors could generally be supposed to know. In the present case the vehicle which caused the accident was not one of ordinary character but a dump wagon of peculiar and exceptional construction; and a question from one of the jurors indicated that he and his fellow jurymen did not clearly understand either the construction or operation of this particular type of wagon; hence it cannot be said here as was suggested in the *O'Neil* case that the answers to the questions which we have quoted could be of but little service to the jurors. On the contrary, it was essential to an enlightened comprehension of the case that they should understand just what the peculiar construction of such a vehicle would permit to be done with it, or render impossible.

In *Sprout* v. *Newton* (48 Hun, 209) the General Term of the fifth department (Bradley, J., writing) sanctioned the admission of the testimony of a witness as to the capacity of another machine of the same kind, made at the same place, in a case involving the capacity of a patented machine.

When an accident alleged to be due to negligence is said to have been caused by the operation of a machine in a particular way, the question whether the machine *could* operate in the way alleged must be a material inquiry; and evidence tending to show that it *could not* thus operate must be relevant and admissible in such a case. If the machine be one with which laymen generally are familiar, a description of its dimensions and weight, and an account of the manner in which it was employed on the occasion in question will usually suffice to enable a jury to determine, without further aid, whether it was capable of the action attributed to it or not; but if it be unfamiliar, the jury may properly be assisted by the

28

experience of those who have actually used it and are thus personally acquainted with its capacity.

In the case of an alleged breach of warranty of a ditching machine, evidence as to the manner in which the machine performed at another place was held to be admissible as tending to prove the capacity of the machine to perform at the place specified in the warranty. (*Baber* v. *Rickart*, 52 Ind. 594, 597.)

Where negligence is predicated upon an accident it is a perfect defense to show that it is physically impossible that the accident could have happened in the manner alleged. This is precisely what the defendant tried to show in the present case; but he was not permitted to adduce evidence pertinent for that purpose. He endeavored to prove by the testimony of a witness who could speak from actual experience in turning the wagon which injured the plaintiff that it could not be turned as sharply as the plaintiff had stated; its physical construction precluded it.

The cases relied upon by the respondent to sustain the exclusion of this evidence have no real application. In *Ferguson* v. *Hubbell* (97 N. Y. 507) the testimony held to have been improperly admitted was the statement of a number of witnesses to the effect that the time at which the defendant set the fires upon his fallow land was a proper time to burn fallows. Such a question has no resemblance whatever to those asked in the present case. An inquiry as to what was the proper time to burn fallow land called for opinion evidence and the expression of a conclusion on the part of the witness. The questions here under consideration did not tend to elicit opinion evidence at all; they called only for a statement of fact from the witness as to his experience in the use of a particular vehicle. The purpose of the questions was to elicit answers which would show that, in actual use, the witness had found it impossible to turn the wagon which caused the accident in the way which the plaintiff said it

turned and in the way indeed in which it must have turned in order to run over him. There is no analogy, therefore, between the *Ferguson* case and the case at bar; and the others cited in the brief for the respondent are even less helpful to him.

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.