THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HENRY MIRO, Defendant.

Court of General Sessions, New York County, April 12, 1934.

*William C. Dodge, District Attorney* [*Louis Capozzoli, Assistant District Attorney,* of counsel], for the plaintiff.

*K. Henry Rosenberg,* for the defendant.

FRESCHI, J. A motion is presented by counsel for defendant to dismiss the indictment, based on the minutes of the grand jury. The contention advanced for this and the other relief now sought is that the evidence before the grand jury upon the crime charged in the indictment, would not, if unexplained or uncontradicted, warrant a conviction by a trial jury; that illegal, incompetent and immaterial evidence was considered by the grand jury; that the evidence failed to establish the commission of the crime of perjury; and that section 313 of the Code of Criminal Procedure was violated. A dismissal of the indictment is also prayed for because of the alleged delay in the prosecution of the case as provided in section 671 of said Code.

The indictment here, filed on May 21, 1931, charges the defendant with perjury. An inspection of the minutes of the grand jury was allowed in June, 1931; but no action was taken thereon by the defendant until the March, 1934, term of this court. Shortly after his arrest, defendant was admitted to bail in the sum of $15,000; and he remained at large thereunder until his trial and conviction in the United States District Court for the Southern District of New York in another case for a violation of the Revenue Act of 1928, section 146, paragraphs a and b (U. S. Code, tit. 26, § 2146, pars. a and b) on April 25, 1932, resulting in his being imprisoned under sentence for a term of three years to be served in the United States penitentiary at Atlanta, Ga., where the defendant is still confined. By reason of such conviction and sentence, this court did, on February 17, 1933, discharge the bail of the defendant in this case and a bench warrant was issued and filed with the warden of said penitentiary for purposes of execution.

The perjury is predicated, in part, upon testimony given by this defendant while under oath before Hon. Samuel Seabury, as referee, in the matter of the investigation of the Magistrates' Courts in the First Judicial Department and the magistrates thereof, on May 13, 1931. The investigation was held by said referee pursuant to the order of the Appellate Division of the Supreme Court of the State of New York in and for the First Judicial Department, dated September 23, 1930, which amended the order of that court of August 25, 1930, in accordance with the statutes in such case made and provided. The order reads as follows:

" The Governor of the State of New York having requested this Court, on its own motion, to investigate the Magistrates' Courts under its jurisdiction, and the Magistrates thereof and it appearing to the satisfaction of this Court that there should also be an investigation of the practices of attorneys practicing in said courts, in aid of such first named investigation.

" Now therefore, pursuant to the provisions of section 132 of the Code of Criminal Procedure, as last amended by Chapter 500 of the Laws of 1930, and by virtue of the powers vested in this Court, this Court, on its own motion, does hereby

" Order that Honorable Samuel Seabury be and he hereby is appointed Referee to conduct an investigation of the Magistrates' Courts in the First Judicial Department, and the Magistrates thereof, in accordance with the provisions of the statutes; and report the proceedings on said investigation to this Court with his opinion thereon, and that upon the coming in of said report such other and further action or proceedings may be taken as to this Court shall seem just and proper; and it is

" Further ordered, pursuant to the power vested in this Court, that Honorable Samuel Seabury be and he hereby is authorized and empowered as such Referee to conduct an investigation of any practices of attorneys practising in said Magistrates' Courts which are obstructive or harmful to the administration of justice or unjust or corrupt, unlawful, fraudulent or unprofessional; said latter investigation being deemed of importance in aid of the said investigation referred to in the foregoing paragraph; that the Referee shall also report the proceedings on said investigation to this Court with his opinion thereon, and that upon the coming in of said report such other and further action or proceedings may be taken as to this Court shall seem just and proper."

Pursuant to subpoena, this defendant appeared before said referee at a private hearing, was sworn and testified. His testimony was deemed necessary and material at an open hearing, and, consequently, at a public hearing, the defendant appeared and gave testimony concerning his activities in connection with the policy game and other forms of gambling and that he had made deposits in and withdrawals from the United States Bank, Lexington Avenue and One Hundred and Sixteenth Street Branch, for a number of years under various assumed names. He admitted having carried bank accounts under the names of Enrique Martin and E. M. Martin. The account under the name of Victor Martin he did not remember, but denied having any bank accounts under the names of Jose Himinez or Jose Cassanova. The signature cards of these were produced, and he positively denied that the signatures were his. In fact, he testified that he had never used or gone under such assumed names; whereas, the testimony and the records in the case show the significant fact that on January 13, 1930, these disputed accounts, including the one of Victor Martin, were opened and used by this defendant. Thousands upon thousands of dollars passed through the bank in this way, showing large deposits

and withdrawals from time to time.  In the handling of his gambling business, the defendant admitted he had " collectors " and " controllers " who made daily reports to him, and all of whom he had under his supervision.  Generally speaking, the perjury complained of arises out of all these facts and circumstances; and more particularly the charge concerns certain of these accounts which defendant denied were his.  Employees of the bank have testified that all these were the accounts of the defendant.

The contention, among others, made by the defendant is that the alleged evidence before the grand jury establishing the alleged false testimony of the defendant about these accounts, deposits, withdrawals and signature cards consists of a " deposition " of this defendant by a stenographer taken before the said referee, which " deposition " was only marked for identification before the grand jury; and which was, nevertheless, treated and considered by the jury as legal evidence.

It appears in the record before the grand jury that the official stenographer who took the testimony of this defendant before the referee was called as a witness and produced a transcript of said testimony, stating that it was a true and correct copy of the stenographic minutes thereof.  The assistant district attorney conducting the examination before that body then offered it for identification, and the transcript was marked People's Exhibit 4 for identification.  This exhibit was then handed the witness (Maul) and the following appears in the minutes: " Q. Did you take down verbatim all the questions that were asked and the answers given?  A. I did.  Q. I show you this record taken before Honorable Samuel Seabury, Referee, open here now at May 13th, 1931, and ask you whether that is a copy of the stenographer's minutes?  A. It is.  Q. Have you compared the transcript with your original notes?  A. I have.  Q. Are these minutes correct?  A. They are.  Mr. Daly: I offer this record for identification."  [Marked People's Exhibit 4 for identification.]  " Q. If you will take this record you will notice that I have checked off certain questions and certain answers.  Will you read from this transcript the questions and answers which I have indicated, which you took and which you have compared with your original notes.  A. [Reading]."  Here follow many questions and answers dealing with the subject-matter of the instant case, contained in the transcribed testimony of the defendant given before the referee.  Clearly, the witness Maul before reading from his transcribed notes had stated in his testimony that he had " taken down verbatim all the questions that were asked and answers given " by the defendant; and after being shown " this record taken before the Honorable Samuel Seabury,

Referee," the witness Maul added that it was " a copy of the stenographer's minutes " which he had compared with his original notes. The witness Maul might have properly read to the grand jury such testimony as was so given by defendant from his original shorthand record without reference to the transcript; and if he chose to read from the " correct copy " of his stenographic notes, his repetition of the questions and answers was tantamount to giving testimony without regard to the fact whether the transcript was marked for identification or in evidence. Statements made by a party as a witness may be received as admissions against interest in the same or any subsequent proceeding. (*McRorie* v. *Monroe*, 203 N. Y. 426.) The witness Maul testified to matters within his own knowledge. The former testimony may be proved by any one who heard it. Thus, a juror, witness, attorney, judge or stenographer is competent. Notes or memoranda of the testimony may be used to refresh the memory of a witness and, when properly proved to have been taken accurately, may even be received as evidence of the testimony given at the former trial. (2 Wigm. Ev. § 1075; Richardson Ev. [4th ed.] § 345, and cases cited.) (See, also, *Grimm* v. *Hamel*, 2 Hilt. [N. Y.] 434; *Trimmer* v. *Trimmer*, 90 N. Y. 675, 676; *McIntyre* v. *New York Central R. R.*, 37 id. 287.) The witness Maul did something more than merely read the contents of a paper marked as an exhibit for identification; he actually gave testimony of what he had heard this defendant say in the investigation before the referee. In my opinion, this was legal evidence and not the mere reading of a deposition within the meaning of section 221-b of the Code of Criminal Procedure. (*People* v. *Elliott*, 172 N. Y. 146; *Smith* v. *State*, 147 Ga. 689; 15 A. L. R. 490.)

There can be no question for the purposes of this motion that the defendant swore falsely before Referee Seabury regarding the accounts above mentioned. The testimony was shown to be perjurious by the testimony of the representatives of the bank.

The defendant now urges the point that the alleged perjurious testimony was not " material to the issue under investigation and, no matter whether the evidence given was false in fact, nevertheless, if it is not material to the issue on trial or under judicial investigation, it is not perjury under the law." Ordinarily, materiality is a question of law for the court (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1, 9, 10; *People* v. *Barbuti*, 207 App. Div. 285, 290); but, under certain peculiar facts, the question as to whether the false testimony in issue is material may become a question for the jury. (*People* v. *Redmond*, 179 App. Div. 127.)

It is quite evident from a reading of the order of the Appellate

Division that, amongst other things, the object of the investigation was to inquire as to the administration of justice in the Magistrates' Courts, the methods used by attorneys in connection with the practice of the law in the Magistrates' Courts, and more especially those methods and practices prevailing in those courts which led to the obstruction or harming of the administration of justice, or which were unjust, corrupt, unlawful and fraudulent or unprofessional practices therein. This defendant, not a lawyer, instigated others to commit crime and would give them " a guarantee or insurance of safe conduct through the Magistrates' Court." How money was used, if any, in this regard was a matter of vital importance to the whole investigation. The referee had the authority, it seems to me, to single out any one case or any number of cases and examine into them. In this connection, he had a right to subpœna and examine not only attorneys, but also witnesses, bondsmen or any person who had been engaged in any manner in the activities and practices of said courts or those in anywise related with their business in, around or about said courts. His powers of investigation were, indeed, very broad. The grand jury stenographic minutes show that this defendant was engaged in the policy game, and as a gambler hired persons to aid and abet him in the commission of these crimes; that he promised them, in advance, that he would provide them a lawyer and a bondsman, if caught; and that if they were sent to jail, he promised to provide during the period of incarceration weekly financial assistance for their families. All this necessarily brought this defendant in frequent contact with the Magistrates' Courts; and it was a proper and lawful exercise of power on the part of the referee to inquire into the extent and source of the defendant's financial ability and worth. An examination into the defendant's finances would aid the referee in the determination of whether any other persons might possibly be connected with the defendant in his nefarious activities. These matters would be relevant to the matters then under investigation; and any person who willfully falsely testified concerning these matters committed perjury. The test here is not whether the testimony of the defendant bore directly upon the issue presented to the referee. Materiality is not thus to be determined. The correct test is laid down by the Court of Appeals in *People* v. *Courtney* (94 N. Y. 490), where the court (at p. 494) used the following language: " we think, there is no just reason for refusing to treat false swearing as perjury whenever the testimony is relevant to the case, although it may not directly bear upon the issue to be found."

In *Wood* v. *People* (59 N. Y. 117, at p. 123) the court said: " If a person swears falsely in respect to any fact relevant to the

issue being tried, then we think he is guilty of perjury, although the case failed from defect of proof of another fact, and although the other fact alleged had no existence.  *  *  *  It is not necessary that the false statements should tend directly to prove the issue in order to sustain an indictment.  If the matter falsely sworn to is circumstantially material 'or tends to support and give credit to the witness in respect to the main fact, it is perjury." (See, also, *People* v. *Root*, 94 App. Div. 84; *People* v. *Davis*, 122 id. 569; *People* v. *Moris*, 155 id. 711.)

In *People* v. *Tillman* (139 App. Div. 572) the defendant was accused of perjury.  He was a witness before the commissioner of accounts of the city of New York, who was conducting a special examination into the accounts and methods of the bureau of licenses. The defendant there falsely testified that he had never received any money from one Francis M. Edwards, the proprietor of a common show in Jamaica, Long Island.  The materiality of this testimony was one of the issues presented by the record on appeal from an order allowing a demurrer to the indictment against the defendant. At page 575 the court stated: " it is evident that even though the defendant was not connected with the bureau of licenses his testimony with respect to the receipt of money from Edwards might be material to show a connecting link to establish corruption or irregular practices on the part of the bureau of licenses in conducting business with those requiring or supposed to require licenses." Exactly that theory applies to the defendant in the case at bar and to the investigation conducted by the learned referee.

Respecting the claim that the evidence of Judge Seabury before the grand jury that the alleged perjury of the defendant was material to the issue under investigation, was prejudicial to the defendant and illegal evidence, it is sufficient answer to say that such fact does not in and of itself make void the proceedings upon which the indictment is based.  There is sufficient legal evidence to sustain the indictment, and it should not be overthrown because some illegal evidence was admitted. (See *People* v. *Doyle*, 107 Misc. 268; *People* v. *Osborne*, 158 N. Y. Supp. 572, 573; *People* v. *Berardini*, 150 Misc. 311; *Hope* v. *People*, 83 N. Y. 418.)

With reference to the last ground for dismissal, the defendant's present confinement in the United States penitentiary makes prosecution in a State court pending such imprisonment impracticable, if not impossible; and the defendant should not be allowed to take advantage of his present position in order to secure a dismissal of the indictment for lack of prosecution.

Motion to dismiss indictment is accordingly denied for the reasons above assigned.