THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MICHAEL CLEMENTE, Appellant.

First Department, December 21, 1954.

*Harris B. Steinberg* for appellant.

*Richard G. Denzer* of counsel (*Paul A. Stone* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

PECK, P. J. Defendant has been convicted of perjury in the first degree (Penal Law, §§ 1620, 1620-a) for false testimony given before the New York State Crime Commission in the course of its investigation of the New York City waterfront. This investigation was part of its broad mandate by Executive Order to investigate generally the relationship between organized crime and units of government. In the course of its investigation, defendant was called first to a private hearing and later to a public hearing at which he was questioned concerning the receipts of money from a certain shipping company in return for his indulgences as a labor leader. He denied receiving any such payments. The indictment charges that his testimony was perjured and constituted perjury in the first degree.

No question is raised as to the sufficiency of the evidence to sustain the conviction. Two exceptions are taken to the trial court's rulings, raising the important questions on this appeal.

1. The court ruled that the question of the materiality of the perjured testimony was one of law for the court rather than one of fact for the jury. Accordingly, the court refused a request of defendant's counsel to submit the question of materiality to the jury and charged the jury that if they were satisfied beyond a reasonable doubt that counsel for the Crime Commission had told the truth when he testified at the trial as to the scope of the hearing that was in progress before the Crime Commission at the time defendant testified, then as a matter of law defendant's testimony was material to that inquiry.

2. The court refused defendant's request to submit to the jury the alternative of finding defendant guilty of perjury in the second degree in addition to the alternatives submitted of a first degree finding or an acquittal.

Defendant contends that the court erred both in charging materiality as a matter of law and in refusing to submit second degree perjury to the jury.

The question of whether materiality is to be determined by the court or by the jury is not free from doubt and difference of judicial opinion. Many cases are cited from other jurisdictions, some holding that materiality in a perjury prosecution is a matter of fact for the jury, but most holding that it is either a matter of law for the court or a mixed question of law and fact. We need not dwell on this diversity of authority, however, because the statutory law in New York, defining perjury and dividing it into degrees, is different from the law of other States, and the Court of Appeals has spoken on the subject sufficiently, although perhaps not definitively, to guide our way.

The important factor in considering the law of New York is the changes made in the law in 1935 and 1936. Prior to that time perjury was a single degree crime in which materiality was an essential element, and the Court of Appeals had stated that materiality was a question of law for the court (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1). In 1935 the New York Penal Law was amended to divide the crime of perjury into two degrees, depending on whether the false testimony related to material matter. If material, the crime was in the first degree; if not material, the crime was in the second degree. In 1936 perjury in the second degree was made a misdemeanor whereas theretofore it had been a felony. Of the amendments

and their effect upon the law with respect to the determination of materiality, the Court of Appeals said in *People* v. *Samuels* (284 N. Y. 410, 414–415) : '' By the amendments of 1935 and 1936 the crime of perjury became similar to other crimes with varying degrees and, like such crimes, subject to the provision of section 444 of the Code of Criminal Procedure. Views to the contrary are based principally upon what was said on the subject of materiality in *People ex rel. Hegeman* v. *Corrigan* (195 N. Y. 1). (Report of the Law Revision Commission, 1939, p. 307.) It must be remembered, however, that *People ex rel. Hegeman* v. *Corrigan* was decided when there were no separate degrees of perjury, and when materiality was an essential element of the crime.''

This observation of the Court of Appeals is in line with the report of the Law Revision Commission which sponsored the 1935 and 1936 amendments and with the reason for the amendments. The commission had noted the high incidence of perjury and the low incidence of convictions, evidencing the reluctance of juries to convict for the high penalty crime, and stated in its 1939 report (1939 Report of N. Y. Law Revision Commission, p. 307) : '' The amendments of those years were made to bring penalties down to a point where juries would convict; they were also intended to give juries a choice of finding materiality, and so convicting of first degree perjury, or of finding false swearing without the element of materiality and so convicting of second degree perjury.''

While the commission's further discussion of the matter in its '' Study Relating to Materiality in Perjury as a Question of Law or a Question of Fact '' reveals considerable confusion on the subject, we accept the commission's statement as to the purpose of the 1935 and 1936 amendments, and it seems to us that the purpose can be served and the law carried out only by submitting to the jury the question of materiality. That this is also the view of the Court of Appeals seems clearly indicated in *People* v. *Samuels* (*supra*); *People* v. *Hirsh* (283 N. Y. 638); *People* v. *Schappes* (291 N. Y. 575), and *People* v. *Reardon* (305 N. Y. 831), although no opinion was written in any of these cases except the *Samuels* case and what was said on the subject in that case was dictum.

Apart from authority, we cannot agree with the District Attorney in his argument addressed to the principle of the matter, contending that the question of materiality is obviously a legal question for the court and one which is beyond the jury's province and capabilities. While as lawyers we are

accustomed to thinking of materiality as a matter for judicial ruling, there is nothing in the nature or quality of materiality which makes it essentially a legal concept or removes it from the ken of a layman's discernment and determination. The word "material" and the idea of materiality are commonly understood, and every day judgments on a variety of subjects are made upon the basis of a layman's sense of materiality.

In the last analysis questions of materiality cannot be removed from a jury's consideration. Although to an exclusionary extent the court may rule out evidence as immaterial, it does not follow that the materiality of the evidence admitted is not something for the jury to consider in weighing the evidence. When we say that the materiality of evidence is for the court but the weight to be given to it is for the jury, we only indicate a certain separation in the function of court and jury in sifting the evidence. It would be a mistake to think that any question of materiality is thereby removed from the jury's sphere or that the jury process of weighing evidence is something entirely apart from judging its materiality.

What the law really does, in the interest of a fair trial and reasonably controlled trial, is to vest in the court a preliminary power of ruling on the materiality of evidence to the end that evidence which a jury should not consider at all may be excluded from their consideration altogether. A ruling in favor of materiality means no more than that the jury may consider the evidence. Its materiality then becomes a question of fact for the jury. And certainly materiality as a substantive element of the crime of perjury is something more than materiality considered in an evidentiary ruling by the court. Materiality in such a case becomes a matter for ultimate determination by the decisional process.

We are not persuaded to the view, therefore, that the nature of the subject requires the removal of the question of materiality from the jury's consideration or reserving it to the court. Especially where the legal frame for considering and weighing the element of materiality in a perjury case is as it is under the New York Penal Law, we are of the opinion that the question of materiality should be left to the jury.

This does not mean that the question need be posed nakedly to the jury for their determination without instructions relating their consideration of the question to the facts of the case. We make no attempt to prescribe or circumscribe the court's charge, but we are of the opinion that under an appropriate instruction the jury should be given to understand that they

must consider and determine the question of materiality as an essential element of the crime, particularly in determining whether, if they find false swearing, it amounts to perjury in the first degree or perjury in the second degree.

We also think that the trial court was obliged to submit the alternative of a second degree finding to the jury. Even if the court's charge in chief, making the determination of materiality turn on the jury's belief or disbelief of the testimony of counsel for the Crime Commission, were sustainable, the defendant would still be entitled, at his request, to have the possibility of disbelief recognized and recorded in a second degree verdict.

The District Attorney, in his brief before us, frankly states the case leading to that conclusion. He states that it would have been technically possible for the court in this case to give further instructions to the effect that if the jury did not believe the underlying facts testified to by counsel for the Crime Commission they might go on to consider perjury in the second degree, of which materiality is not an element. This would constitute, the District Attorney observes, a direct application of section 444 of the Code of Criminal Procedure under a charge presenting materiality as a question of mixed law and fact and illustrates the general consistency of such a charge with the operation of that statute in perjury cases. However, as the District Attorney concludes, the court did not follow this procedure but directed the jury to acquit in the event of factual disbelief rather than to go on and consider second degree perjury.

We conceive this limitation on the jury's province to be error. The rule is clear that the trial court must charge alternative degrees of crime and give the jury a choice between them, as well as of an acquittal, wherever a verdict in different degrees would be permissible on the evidence. Although properly arguing that the primary reason for this rule is to save a prosecution from failure where the crime charged is not altogether established but a crime of lower degree is proven, the District Attorney concedes that the defendant, as well, is entitled to have the several degrees of crime charged.

We must recognize and regard the reality of the psychological factors involved and the importance of allowing them legitimate play in a criminal case. Such recognition underlay the report of the Law Revision Commission recommending dividing the crime of perjury into degrees. The psychological factor could not have been more frankly acknowledged than it was in that report.

It is the policy of the law to allow juries a latitude which is not hemmed in by absolute logic. Many considerations enter into a jury's verdict which cannot be itemized and weighted in a chart of legal instructions. A jury is expected to stay within the bounds of reason, yet they may indulge tender mercies even to the point of acquitting the plainly guilty. Similarly they may, on almost any excuse, convict of a lower degree of crime although conviction of a higher degree is clearly warranted.

Take the present case as an example. The jury was out for long hours, asked for a reading of parts of the evidence and for additional instructions and apparently had a considerable struggle in arriving at a verdict. It may well have been that if second degree perjury had been submitted to them they would have embraced that alternative. We think that if a second degree conviction was at all permissible on the evidence the jury should have been given that alternative and the defendant that chance.

Certain cases are cited to us where appellate courts have held that the trial court was not obliged to submit a lower degree of crime to the jury. Those are all cases where there was no possible basis in the evidence for finding that the lower degree of crime had been committed. (See *People* v. *Meegan,* 104 N. Y. 529, and *People* v. *Mussenden,* 284 App. Div. 479.) In other words, where there is neither a factual nor a legal basis for any finding other than one of guilt in the higher degree or acquittal, there is no obligation upon the trial court to submit some intermediate alternative. Such a case, for example, would be an acknowledged crime of burglary with all the elements admittedly established and the defense placed solely on the ground that the defendant was not in the vicinity at the time of the crime. Obviously the only question in such a case is the identification of the defendant with an admitted burglary, calling for a verdict of guilty of that charge or acquittal, and there would be no room for a finding of unlawful entry instead of burglary or any requirement or warrant for the court submitting a lower degree of crime to the jury.

It may be forcefully argued, as the District Attorney argues, that the materiality of the false testimony given in this case is so obvious that there was no rational basis for a second degree verdict rather than a first degree verdict. The answer to that is that materiality was not conceded — indeed it was put in issue though not pressed — and no essential element of a crime, however clear the facts may be in the evidence, may be taken

away from the jury or a verdict in any respect directed by the court. (*People* v. *Walker,* 198 N. Y. 329; *People* v. *Marendi,* 213 N. Y. 600, 618; *People* v. *Flack,* 125 N. Y. 324, 334.)

At least there was a factual question, however clearly indicated the answer was, of the scope of the Crime Commission inquiry at which defendant was called to testify. The court submitted that question to the jury, as he deemed he was obliged to do, in the form of leaving the question of the Crime Commission counsel's veracity to the jury. It seems to us that the legal corollary is that the defendant was entitled to a charge, which the District Attorney concedes was permissible and which we say was therefore required, as to what the jury might do if they did not accept the testimony of counsel for the commission as to the scope of the inquiry. In that event, and the event could not be taken away from the jury, they were entitled to bring in a verdict in the second degree.

It is our conclusion, therefore, that regardless of whether the question of materiality as such should have been submitted to the jury, the court was obliged, at defendant's request, to give the jury the alternative of a second degree conviction in the event that they did not accept the testimony of counsel for the Crime Commission.

The judgment should be reversed and a new trial ordered.

BREITEL, J. (dissenting). Defendant was convicted on two charges of perjury in the first degree with respect to testimony that he gave before a private and a public hearing of the New York State Crime Commission. The commission was then inquiring into the claimed criminal and chaotic economic conditions existing on the New York City waterfront. The investigation was one conducted pursuant to directions contained in an Executive Order of the Governor of the State. It received wide publicity. One of the results of the investigation was the enactment of legislation which made drastic changes in the regulation and economic structure of the various occupations conducted on the waterfront with reference to the transportation of cargo by water.

At the time defendant, a waterfront union official, was called by the commission to testify, the commission was engaged in an investigation of alleged payments made by waterfront businessmen to labor union representatives. Defendant's allegedly false testimony consisted of denials that his agents were sent to shipping and stevedoring companies with the purpose of collecting moneys. The moneys were believed to represent the proceeds of "shakedowns" and "bribes".

The falsity of defendant's testimony upon this trial for perjury was proven by testimony of a shipping company executive and a New York City detective, transcripts of tapped telephone conversations and through various documents and books reflecting the alleged payments. Upon the present appeal it is not questioned that defendant was convicted on evidence that the jury was entitled to believe beyond a reasonable doubt. Nor is it disputed upon this appeal that defendant was an active, if not a leading, figure in the waterfront activities which were under investigation. Error, however, among others not discussed here, is assigned on the twin grounds that the Trial Judge erroneously charged the jury that the materiality of defendant's testimony existed as a matter of law, and failed to charge the lesser degree of the crime of perjury, namely, perjury in the second degree as a misdemeanor. It is submitted that both assignments of error are without substance.

Defendant was indicted on two counts, each charging the felony of perjury in the first degree (Penal Law, §§ 1620, 1620-a). The first related to the testimony given at the private hearing and the second to the testimony given at the public hearing. After conviction by the jury, defendant was sentenced to a term of from two and one-half to five years in State prison on each count, the sentences to run consecutively. A certificate of reasonable doubt was denied at Special Term, by Mr. Justice SCHREIBER, in a closely reasoned and studied opinion. (N. Y. L. J., March 3, 1954, p. 8, col. 5.)

The first question to be considered is whether the Trial Judge properly instructed the jury that defendant's allegedly false testimony was material as a matter of law. The proof in the case consisted of the Executive Order of Governor Thomas E. Dewey establishing the New York State Crime Commission and defining the scope of its duties under various provisions of the Executive Law; the testimony of a representative of the commission (Mr. Arps, Assistant Chief Counsel) as to the nature and scope of the inquiry being conducted by the commission into conditions on the waterfront; and a further order of the Governor directing the commission to hold public hearings on matters affecting the waterfront and the port of New York. None of these facts was disputed in any manner upon the trial and none of them is now disputed upon this appeal. Defendant's testimony, upon which the charges of perjury were based, was concededly given within the framework of the commission's undisputed purview. At no time upon the trial, nor upon this appeal, is the suggestion seriously made that defendant's testi-

mony was not material to the purpose of the inquiry. In fact, the only defense at the trial was truth, and, to a limited extent, lack of intent. On another ground of error, to which detailed reference will not be made, it is suggested that there was an ulterior purpose in having defendant testify. This, it is claimed, was to lay the foundation for convicting him of the crime of perjury rather than seeking to convict him of a substantive crime.

With this background, the Trial Judge charged the jury as follows:

" Obviously, with respect to each count of the indictment, you must first be satisfied beyond a reasonable doubt that there was in progress a hearing or inquiry involving the ends of public justice, in which an oath is required by law, or may be administered.

" If you are satisfied beyond a reasonable doubt that Mr. Leslie Arps, former Special Assistant Attorney General, former Assistant Chief Counsel to the New York State Crime Commission, who testified here, told the truth, then I charge you as a matter of law that the New York State Crime Commission was in session pursuant to law on November 26, 1952, and on January 21, 1953, and on each of said dates was legally conducting a hearing or inquiry involving the ends of public justice, and that a Commissioner of said New York State Crime Commission legally had the power and authority to administer to the defendant Clemente the oath to testify truly before said New York State Crime Commission."

And then later: " As to the third element of the crime, that the testimony was material, I charge you that the question of whether the testimony alleged to be false in each of the two counts in this indictment was material, are questions of law for the Court to pass upon, therefore, if you determine beyond a reasonable doubt that such a hearing was in progress on either or both of said dates, I charge you as a matter of law that the testimony alleged to be false in each of the counts in the indictment, was material to the inquiry conducted by the New York State Crime Commission. You must accept that instruction from me as final on that element."

It is evident that the Trial Judge properly submitted to the jury a determination of the ultimate facts necessary to base the finding of materiality in the crime of perjury, although none of them was disputed. He did instruct them that, if they found those ultimate facts to be present beyond a reasonable doubt, then they were obligated to find, in accordance with law and as

a matter of law, that the allegedly false testimony was material. In other portions of his charge he, of course, instructed the jury as to the necessity of finding the other and factual elements in the crime of perjury, including that of the giving of the testimony, its falsity and willfulness. The question posed is whether the jury should have had submitted to it the additional issue of the materiality of the allegedly false testimony. Put another way, it is contended that materiality — which in any other frame of reference involves a question of law upon which the court rules — in a prosecution for the crime of perjury, becomes an issue of fact upon which the jury has the sole province of passing, save alone that the court must determine that there is at least sufficient evidence of materiality to submit the question to the jury.

Let us assume for the moment that the question whether materiality in a prosecution for perjury is a question of law or fact had no history — had not been passed on before in any context. It would not then be difficult to analyze the elements of the crime and reach a conclusion based on reason as to whether materiality is an issue to be determined by the court, as a matter of law, or to be submitted to the jury, as a question of fact. It would be clear that the ultimate facts upon which materiality must rest would be for the determination of the jury, and the jury alone, beyond a reasonable doubt. On the other hand, the relationship between these ultimate facts — involving an application of law and the construction of the legal effect of facts, as distinguished from inferences derived from the facts in evidence — would be matters upon which the court alone would make the determination, as a matter of law. This is not unusual in either civil cases or criminal cases. It occurs often in the criminal law that the relation subsisting among congeries of facts is a legal one to be announced by the court, and with which the jury has no concern, except to apply it to the asserted facts if it should find that the evidence establishes those facts beyond a reasonable doubt. Thus, the court advises the jury, as a matter of law, that, if it believes beyond a reasonable doubt the defendant, while armed with a dangerous weapon, broke into this house in the nighttime with the intent to commit larceny and that this house was occupied as a dwelling, then, he is guilty of burglary in the first degree. The court is announcing a critical legal relationship. Each of the facts upon which that relationship depends, if the jury is to find the defendant guilty, must be proven to the jury's satisfaction beyond a reasonable doubt. But with the nature of that relation-

ship, if the jury should find the facts, the court makes the determination, namely, the logical and legal conclusion the jury must reach if its verdict is to be honestly rendered. The jury may not do so, but it is supposed to, and its freedom does not curtail the province of the judge. (See HOLMES, J., in *Horning* v. *District of Columbia,* 254 U. S. 135, 138.)

In the case of perjury, the status of materiality as a legal relation is more obvious than are the relations involved in other crimes. For here we are dealing with a crime involved in the administration of justice — in the administration, therefore, of law. What is material or immaterial is something that the law tells us, as in every other context of law. The finding of the necessary facts before materiality is present remain, as always, exclusively the province of the jury.

When we look to the history of the rule in New York and examine the authorities we may find some language, but not often, which goes beyond the foregoing analysis. The holdings do not. On closer examination even the language may be reconciled with the principles which are applicable.

It is conceded that before perjury was divided into degrees in 1935 (L. 1935, ch. 632), and there was but one crime of perjury which required materiality as an element, it had been assumed in this State, that the question was one of law for the court alone to determine. (See 1939 Report of N. Y. Law Revision Commission, pp. 301 *et seq.*; N. Y. Legis. Doc., 1939, No. 65 [G].) The logic was compelling. That explains the language used in *People ex rel. Hegeman* v. *Corrigan* (195 N. Y. 1, 9). (See, also, *People* v. *Moris,* 155 App. Div. 711, 712.) The court was speaking of materiality as the relationship among facts and not of the finding of the facts. This it held, as part of the *ratio decidendi,* and not as dictum, was a matter of law for the court alone to determine. It was not said that if certain facts were undisputed that, therefore, the jury must convict for perjury, no more than did the trial court in the instant case. The distinction becomes clearer, later, when, in *People* v. *Redmond* (179 App. Div. 127, appeal dismissed, 225 N. Y. 206), the court held that, while it has been said that materiality is frequently merely a matter of law for the court to determine, where facts, upon which the relation of materiality depends, are in issue, then the jury has the province of determining whether the facts were present beyond a reasonable doubt sufficient to sustain the relation of materiality. (See discussion of the *Redmond* case in 1939 Report of N. Y. Law Revision Commission, pp. 321–322.) But, even in the *Redmond* case it is unlikely that the court

would have found error if the trial court had charged " if you believe beyond a reasonable doubt that on the prior trial, in which the testimony was given by this defendant, there had been no concession that the ceremonial marriage had been entered into, then I charge you that the defendant's testimony as to the identification of the parties who participated in that ceremonial marriage is material ". Thus, the court in the *Redmond* case commented: " From the remark of counsel upon the argument of the motion, it would appear that it is made upon the theory that we have in our such decision held in effect that upon the trial of a criminal perjury case the question of the materiality of the alleged perjurous statement is always a question of fact. While I am of that impression, our decision does not go to that extent. Upon this record it is a question in dispute whether or not, at the trial before the jury in the partition action of *Barker* v. *Barker,* in which the alleged perjurous statement by defendant in his testimony was made, as a witness for one of the defendants therein, there was really any issue as to the fact of the ceremonial marriage of the persons involved ". (179 App. Div. at p. 128.) (Accord: *People* v. *Miro,* 151 Misc. 164, 168.)

It is conceded in this case that, not only in this State, but almost everywhere else in the United States where there is but one crime of perjury, the courts have held that the legal relation of materiality is a matter upon which the courts instruct the jury as a matter of law. (See, e.g., *Sinclair* v. *United States,* 279 U. S. 263, 298–299; *United States* v. *Marachowsky,* 201 F. 2d 5, 18 [1953], certiorari denied 345 U. S. 965; *United States* v. *Weber,* 197 F. 2d 237 [1952], certiorari denied 344 U. S. 834; *United States* v. *Singleton,* 54 F. 488 [1892]; *People* v. *Kriton,* 73 Cal. App. 2d 184 [1946]; *State* v. *True,* 135 Me. 96 [1937]; *State* v. *Ingels,* 4 Wash. 2d 676 [1940], certiorari denied 311 U. S. 708; *Cothran* v. *State,* 39 Miss. 541, 547 [1860].)

While there are cases which speak of mixed questions of fact and law, what is referred to is the not-too-happy verbal articulation of the separation between the relation among ultimate facts, which is a matter of law, and the finding of the ultimate facts, which is the issue for the jury. (See, e.g., *People* v. *Barbuti,* 207 App. Div. 285; *People* v. *Miro,* 151 Misc. 164, *supra; Bridges* v. *United States,* 199 F. 2d 811, 833 [1952], revd. on other grounds, 346 U. S. 209; *Luse* v. *United States,* 49 F. 2d 241 [1931], and *Wilkinson* v. *People,* 226 Ill. 135 [1907].) The distinction was lucidly made in the *Bridges* case where, in clarifying the statements made in the *Luse* case some twenty-one

years before, the court said: "Appellants argue that the trial court's instruction that the false statements were material to the naturalization proceeding as a matter of law, was erroneous. The question of materiality is always for the court. Sinclair v. United States, 1929, 279 U. S. 263, 298, 49 S. Ct. 268, 73 L. Ed. 692; Travis v. United States, 10 Cir., 1941, 123 F. 2d 268, 270. And that is also the rule in this circuit despite appellants' misconstruction of the holding in Luse v. United States, 9 Cir., 1931, 49 F. 2d 241. For while it is true that in the Luse case this court said that what is material in a perjury case is a mixed question of fact and law, we also said that the question of fact is confined to what actually took place. Once it was determined what took place, the materiality of such facts to the issue was for the court alone. There was no error here." (*Bridges* v. *United States*, 199 F. 2d 811, 833 [1952], *supra*.)

The text writers have for many decades construed and analyzed the rule and its application in the same manner. (See, e.g., 1 Burdick on Law of Crime [1946], p. 500; 3 Bishop on New Criminal Procedure [1913], p. 1822; 2 Wharton's Criminal Law, § 1550; 48 C. J., Perjury, § 178; 70 C. J. S., Perjury, § 71, subd. [c].)

While in England, for a time, there was doubt cast upon the prevailing rule that materiality was a question of law for the court to determine (9 Halsbury's Laws of England [1909], p. 491, note [*l*]; 1 Russell on Crimes and Misdemeanors [7th ed., 1910], pp. 474–475) the question was completely set to rest by the Perjury Act of 1911, which by express provision made the issue one of law for the trial court to determine. (1 & 2 Geo. V, ch. 6, § 1, subd. 6; 9 Halsbury's Laws of England [2d ed., 1933], p. 343.)

Surely this does not jibe with the facile generalization, suggested by defendant as decisive of the issue, that in a criminal case the jury must be satisfied beyond a reasonable doubt with regard to every element of the crime, as a question of fact (even though the issue as to these elements is raised by no more than the plea of not guilty supported by the traditional presumption of innocence). Of course, the answer is, as stated earlier, that the ultimate facts in a criminal case, established by evidentiary proof, must be proven to the satisfaction of the jury beyond a reasonable doubt. To this there is no exception. But the relationship among the ultimate facts, as found, may, and does, constitute a question of law for the court alone to determine.

Applying the foregoing reasoning to this case, it was necessary for the jury to find as ultimate facts, beyond a reasonable

doubt, that there was a lawful proceeding, that an oath was lawfully administered, that the purpose of the inquiry was in fact within the scope of the authority of the forum, that the testimony of the defendant was given in pursuit of the objective, in that forum, and that such testimony was willfully and knowingly false. The court charged the jury, as it was required to, that, if it believed the testimony of the witness for the People, Mr. Arps, with respect to the objective of the hearings and the purpose for questioning the defendant, then such testimony was material. The jury could have capriciously ignored this charge, but it did not. It exercised its function honestly, responsibly and, we think, properly.

Now, it is claimed, because the statute was changed in 1935 — when perjury was divided into a higher and lesser degree — that, therefore, the status of materiality as an issue of fact has been changed. Logically, the reasoning is fallacious, for materiality was still requisite to perjury in the first degree. But, there is no question that, in the first cases which arose under the new statute which provided for two degrees of perjury, it was argued by learned counsel before the Court of Appeals that the statutory change had resulted in the " new rule " that materiality was an issue of fact. The interesting thing is that the Court of Appeals did not adopt this reasoning in its opinions. Involved on these occasions was the question whether the Court of Special Sessions, having jurisdiction limited to misdemeanors, retained its jurisdiction when materiality of the allegedly false testimony was asserted in the information. It was contended by the unsuccessful defendants in those cases that, since the information revealed, as a matter of law, that a prosecution could have lain for perjury in the first degree, the Court of Special Sessions was ousted of jurisdiction. The Court of Appeals held that the Court of Special Sessions did not lose jurisdiction. In passing, it noted that before the statutory change the question of materiality would have been one of law. It did not say that it had now become a question of fact. But it merely held that the lesser degree of perjury was covered in the higher crime of perjury in the first degree and that, under the new statute, the People had the power to elect to try the defendant for a misdemeanor regardless of the gravity of his offense. (*People* v. *Samuels*, 284 N. Y. 410; *People* v. *Hirsh*, 283 N. Y. 638.) In other words, the *ratio decidendi* was that prosecution could be had for a misdemeanor, even though on the face of the pleading it was evident that a more serious degree of the crime could

have been charged. It was not necessary to decide, and it was not decided, that the rule as to materiality had been changed. Presumably the rule remained as it always had been. The underlying ultimate facts involve issues for the jury alone to determine. The relation among those facts remains a matter upon which the court was obliged to announce the rule as a matter of law.*

In passing, one more comment is appropriate to further demonstrate the unpersuasiveness of defendant's position with respect to the issue of materiality. The court also charged the jury (*supra*) that, if it believed Mr. Arps' testimony beyond a reasonable doubt, then, as a matter of law, the commission was in session pursuant to law and had authority to administer an oath. The necessity that the oath be authorized or required by law was, like materiality, an " element " of the crime of perjury in the first degree. Yet defendant does not contend that the court erroneously charged that, as a matter of law, this " element " was satisfied if the jury believed Arps' testimony beyond a reasonable doubt. Logically, if materiality is a question of fact for the jury, so is the satisfaction of the requirement by law of an oath. But, none would hardly contend that.

It would be difficult to comprehend a situation in the administration of justice where there would be transferred to the province of the jury questions of legal relation. It can be done. It exists in the law of libel (N. Y. State Const., art. I, § 8). But the rule there has its special history and special reason. It would hardly make for good administration of justice to have juries pass on issues that are, by their very nature, propositions of law. Materiality is peculiarly a matter of law, since it can never be asserted except by one, at the same time, asserting a proposition of law. This is entirely different from what the jury does when it finds facts — when it determines what has occurred. Nor does it justify a perversion of the jury process to argue that this is a way of conferring upon a jury a leniency-dispensing power. Should that ever be the legislative wish, it can confer the power very directly as it has already in the case

---

* Nothing in the *Schappes* (291 N. Y. 575) or the *Reardon* (305 N. Y. 831) cases changes the subsisting rule. In the *Schappes* case, after the trial court submitted materiality to the jury at defendant's express request, defendant, on appeal, reversed his position and argued that this submission was error. In the *Reardon* case, after a formal exception to the court's statement early in the trial that materiality was a question of law, defendant failed to except to the charge or request that materiality go to the jury; moreover, he did not raise the issue in his brief or on oral argument to the Appellate Division.

of felony murder (Penal Law, § 1045-a).* Where, in proper cases, the jury is given the choice among degrees of crime, the choice is to be exercised by them within a legal framework. Never are they given the responsibility, except in the unusual case of libel, the power to interpret the law.

Even the Law Revision Commission, in discussing the effect of the 1935 amendment, was of the opinion that it would be unsound to permit the jury to determine materiality as a question of fact. Thus, it observed: "To make materiality a question for the jury's determination appears unwise, (1) because as a matter of practice it has quite uniformly been determined by the court, and (2) because the court is better suited to pass upon that question on the evidence of written records than is the jury." (1939 Report of N. Y. Law Revision Commission, p. 308; N. Y. Legis. Doc., No. 65[G], p. 8.) Consequently there is no warrant for the suggestion that the lower degree of perjury was devised to give the jury the choice between degrees by ruling on the issue of materiality. Where both degrees are submitted, the jury may choose between the degrees in perjury no differently than it does in burglary, assault, or in any of the other degree crimes.

Therefore, based on reason, and in conformity with the applicable precedents, and in consonance with the overwhelming — indeed almost unanimous — weight of authority throughout the United States, it is clear that the Trial Judge properly charged the jury with respect to the issue of materiality in this prosecution for perjury.

The next question in the case is whether the Trial Judge was obliged to submit to the jury, as an alternative upon which it might have found defendant guilty, the misdemeanor of perjury in the second degree. The misdemeanor differs from the felony only in that it dispenses with the need for establishing materiality as an element. In view of what has been said before, the answer to this question is covered by the answer to the first question discussed herein. If the materiality of defendant's testimony in the Crime Commission's hearing was material as a matter of law, then certainly the jury could not have properly found defendant guilty of the misdemeanor of perjury in the second degree which omits the requirement of materiality. And

---

* In 1939 the Law Revision Commission recommended enactment of a new section to the Penal Law, § 1620-c, which would have done this in the case of perjury, by requiring the court to submit both degrees. The proposal was not adopted. (1939 Report of N. Y. Law Revision Commission, pp. 309–310, 323–326; N. Y. Legis. Doc., No. 65[G], pp. 9–10, 23–26.)

it is difficult to see any distinction, whether we regard the lesser crime as a lower degree of the higher one, as an included crime, or as one merged in the higher one.

But it is suggested that there are precedents for submitting to juries lesser degrees of crime when the lesser degrees are covered within the higher, and that this serves, among other things, the function of permitting juries to deal more leniently than the law requires with persons charged with crime. There is no question about the rule that where a defendant is charged with a higher degree of crime, he may be prosecuted for a lesser degree of crime if the People so elect. In appropriate circumstances, where defendant has been charged with a higher crime, he may be entitled to have a jury consider whether he should be convicted of a lesser offense rather than of the higher one. (Code Crim. Pro., §§ 444, 445.) But the rule has never been different from the way it has been so recently and unanimously restated in this court (*People* v. *Mussenden,* 284 App. Div. 479), namely, that the obligation to submit the lesser degree of crime, even where it is charged in the indictment, let alone where it is not, as in this case, exists only where there is a possible view of the facts that would justify a verdict other than one in the higher degree which the court intends to submit to the jury. (*People* v. *Cummings,* 274 N. Y. 336; *People* v. *Stevens,* 272 N. Y. 373; *People* v. *Murch,* 263 N. Y. 285; *People* v. *Martone,* 256 N. Y. 395; *People* v. *Seiler,* 246 N. Y. 262; *People* v. *Monat,* 200 N. Y. 308; *People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Meegan,* 104 N. Y. 529; *Buel* v. *People,* 78 N. Y. 492, 501; *Foster* v. *People,* 50 N. Y. 598.) When the rule has been invoked, moreover, there is required to be present a request by the defendant for the submission of the lesser degree. (*People* v. *Monat, supra; Buel* v. *People, supra; People* v. *Jordan,* 125 App. Div. 522; cf. *People* v. *Martone, supra,* and *People* v. *Cohen,* 223 N. Y. 406, 429.)

As has been already pointed out, on no rational and moral view of the facts, and as a matter of law, could this defendant have been guilty of merely the misdemeanor of perjury in the second degree. Defendant must have been guilty of material perjury, that is perjury in the first degree, or not at all. This follows whether we regard the lower degree as a true degree crime, or included crime, or one merged in a higher crime. This is not contradictory of the proposition expressed by the Court of Appeals that, where perjury in the first degree is in fact present, the People may elect to prosecute for the misdemeanor (*People* v. *Samuels,* 824 N. Y. 410, *supra*). The fact is the

People did not so elect in this case. The defendant was indicted for perjury in the first degree and in no lesser degree, and the People did not ask that perjury in the second degree be submitted to the jury.

We note that in *People* v. *Samuels* the court emphasized that the statutory change did not create two new crimes. It was said (p. 414) : " The section as amended defines one crime, perjury. To constitute that crime, materiality is no longer of the essence. Its existence may warrant an indictment for perjury in the first degree, but it does not constitute a different crime, so as to make such an indictment requisite. The degrees of the crime are not mutually exclusive."

While it is true that, before the defendant could be convicted of perjury in the first degree, the jury must have found credible the uncontradicted and undisputed testimony of Mr. Arps, the representative of the State Crime Commission, it does not follow that the Trial Judge was obligated (although he may have perhaps been permitted) to submit an instruction that could only result in a verdict based on illogic, fancy, or views on punishment with which the jury normally has no proper concern (see *People* v. *Cummings*, 274 N. Y. 336, *supra*). It is still true that the function of the jury is to determine what occurred, and, in a criminal case, to determine what occurred beyond a reasonable doubt. The jury system does not require, nor would its strongest advocates urge, that matters properly legal in character be submitted to the jury. This, notwithstanding recognition that our criminal law has had added from time to time, deliberately, devices to permit the exercise of leniency by juries or to make sure that prosecutions would not fail because of jury reluctance to convict for a higher offense (*People* v. *Mussenden*, 284 App. Div. 479, *supra*).

Mr. Arps' testimony was uncontradicted at the trial and no one now suggests its untruthfulness. Defendant concedes, for the purpose of this appeal, that the evidence is sufficient to support a verdict of guilt beyond a reasonable doubt. The jury properly so found. There is no possible prejudicial error, if error there was, in the court's " failure " to charge that, if the jury did not believe Arps, then it could, at best, find defendant guilty only of perjury in the second degree.

Moreover, the fact is that in this case there was no request to submit the misdemeanor of immaterial perjury, that is, perjury in the second degree, as an alternative to the felony of material perjury, that is, perjury in the first degree. The only request in the record reads as follows:

"Mr. Murray: And now at this time I ask your Honor to *remove* from the consideration of the jury the two counts of perjury in the first degree, on the ground that the evidence here does not sustain the allegation in the indictment of materiality, *and* I ask your Honor to submit the case to the jury on perjury in the second degree *as far as both counts* are concerned.

"The Court: Your motion is denied, Mr. Murray, for the reason that I intend to charge the jury that the question of materiality is a question of law and that as a matter of law the alleged testimony was material to the inquiry and investigation in the course of which it is alleged to have been given." (Emphasis supplied.) This was no request for the submission of alternative degrees of crime. This was a request for a substitution of misdemeanor counts in lieu of the felony counts in the indictment, on the ground that, as a matter of law, there was insufficient evidence to base the element of materiality in the crime of perjury. In any event, from the language it is, at best, depending entirely on the meaning of the conjunctive "and", not clear that defendant was electing (assuming that he had the right to elect) to go to the jury in the lesser degree as well as the higher. It would require a trial judge, in the tension and pressure of a long trial, after his delivery of the charge to the jury, in the midst of a flurry of motions, requests and exceptions, to parse the clauses related by the conjunction, and, at the peril of failure of an extended and costly prosecution, to understand that counsel meant what it is now claimed on appeal, dubiously, he meant. (See *People* v. *Martone,* 256 N. Y. 395, 397, *supra,* where conviction was reversed because the court submitted a lower degree and the jury returned its verdict thereon. Said the court: "There is no possible view of the facts which can warrant any verdict except acquittal or murder in the first degree.")

It is not lightly to be assumed that defendant — despite the position he takes on this appeal — desired perjury in the second degree to go to the jury. He may very well have wanted to leave the jury without basis for compromise — with the heavy choice between conviction of a felony and acquittal. In this connection, it is not without significance that defendant's counsel urged, only once, and then qualifiedly, that the lesser degree be submitted to the jury. But, in any event, in the view expressed herein it is immaterial whether defendant did request to go to the jury on the misdemeanor, since that was a matter solely within the province of the Trial Judge, and perhaps, within the option of the People, if they were anxious that a prosecution

should not fail because of an anticipated jury reluctance to convict for a higher crime.

For reasons set forth, the Trial Judge properly instructed the jury that the defendant's alleged false testimony was material as a matter of law and he was entitled to submit to the jury the counts contained in the indictment without including lesser degrees of the crimes contained therein. The evidence to sustain the conviction was more than ample and that is not disputed on this appeal. Technical issues there are in this case. Reversible error or prejudice there may be a semblance, but no scintilla.

Accordingly, the judgment of conviction should be affirmed.

DORE and COHN, JJ., concur with PECK, P. J.; BREITEL, J., dissents and votes to affirm in opinion, in which BASTOW, J., concurs.

Judgment reversed and a new trial ordered.