# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

December 7, 1923.

## THE PEOPLE v. THOMAS V. BARBUTI.

(207 App. Div. 285.)

(1) PERJURY—INDICTMENT IS BASED ON TESTIMONY GIVEN BY DEFENDANT WHO WAS CHARGED WITH RECEIVING STOLEN PROPERTY—SAID TESTIMONY WAS TO EFFECT THAT DEFENDANT WAS NOT PRESENT WHEN CERTAIN CONVERSATION WAS HAD—SAID CONVERSATION INTRODUCED TO SHOW GUILTY KNOWLEDGE BY DEFENDANT IN OTHER PROSECUTION, RELATED TO PLAN BETWEEN OWNER OF AUTOMOBILE AND SAID DEFENDANT AND COLLECTION OF THEFT INSURANCE.

A conviction of perjury cannot be sustained where it appears that the alleged perjurious testimony was given by the defendant upon the trial of another who was accused of the crime of criminally receiving stolen property; that said testimony upon which the indictment is based was to the effect that the defendant was not present at a certain conversation claimed by the prosecution to have been had between the defendant in the other prosecution and another; that said conversation which was introduced in the other prosecution for the purpose of showing guilty knowledge on the part of the defendant therein, related to a plan whereby the owner of an automobile and the defendant in the other prosecution agreed that there should be a pretended theft of the automobile by a confederate who was to deliver it to the said defendant and the owner was to recover insurance for the theft.

(2) SAME—SAID EVIDENCE SHOULD NOT HAVE BEEN ADMITTED IN OTHER PROSECUTION.

Said evidence relating to the pretended theft of the automobile should not have been admitted in the other prosecution for the purpose of showing guilty knowledge, since it related to a crime entirely different from that charged in the indictment and said testimony was not, therefore, material, and likewise the testimony by the defendant herein that he was not present at the alleged conversation was not material in that prosecution and could not, therefore, be made the basis of a charge of perjury.

(3) SAME.

Furthermore, it was error to admit in evidence in this prosecution testimony taken on the other prosecution not relating to the alleged conversation.

(4) SAME—EVIDENCE TENDING TO ESTABLISH GUILT OF DEFENDANT ON
OTHER PROSECUTION NOT ADMISSIBLE.

 Likewise, it was error to admit in evidence in this prosecution testi-
mony tending to show that the defendant in the other prosecution was
guilty of the crime charged therein, since the question of his guilt or
innocence is not an element in this case.

 RICH, J., dissents.


APPEAL by the defendant, Thomas V. Barbuti, from a judg-
ment of the Supreme Court, county of Nassau, rendered
against him on the 12th day of July, 1921, convicting him of
the crime of perjury.

*Townsend Scudder,* for the appellant.

*Charles I. Wood (Charles R. Weeks, District Attorney,* with
him on the brief), for the respondent.

JAYCOX, J.:

The defendant was convicted of the crime of perjury at a
term of the Supreme Court, held in the county of Nassau
in the month of June, 1921. The alleged perjurious testimony
was given upon the trial of one Carman Plant, accused of the
crime of criminally receiving stolen property. (Penal Law,
§ 1308.) Upon the trial of that indictment, for the purpose
of showing that the defendant received the stolen property
(an automobile) with knowledge that the same had been stolen,
the People were permitted to prove an alleged conversation
between Plant and one Hoffman at which this defendant was
present while the three were having luncheon at Ellison's, in
or near the village of Freeport in said county of Nassau.
From the testimony of the defendant given upon the trial of
Plant and read in evidence upon the trial of this action, it
appears that the defendant did not testify directly that such
conversation did not occur, but did testify to a state of facts
that made that conversation impossible. He testified that

he, Plant and Hoffman did not go to Ellison's to lunch, but
that he, Plant, and one Dickerson went to the Elks' Club in
the village of Freeport and there had lunch together. It is
for giving this testimony that the defendant has been indicted
and convicted.

To warrant a conviction of the crime of perjury the testi-
mony must be wilfully and knowingly false in a material mat-
ter. (Penal Law, § 1620.) The alleged testimony must relate
to a matter material to the issues of the action then on trial.
This has been the law from time immemorial. (People v. Teal,
196 N. Y. 372, 376.) There is no claim, as I understand the
attitude of the People, that, in and of itself, the testimony of
the defendant had any materiality. Its materiality is entirely
dependent upon the conversation which it is claimed occurred
at Ellison's. This luncheon episode occurred at the recess of
an examination before a magistrate of a criminal charge against
one O'Neill arising out of the possession of a stolen auto-
mobile. This was the examination referred to in People v.
Harvey (235 N. Y. 282). Plant was the county detective
and apparently had made an investigation in good faith of the
case, spending some time in an endeavor to find a man named
Griffith from whom O'Neill claimed to have purchased the
car and from whom he produced a bill of sale. This was
Plant's first acquaintance with O'Neill. Before the day of
the examination at Freeport, Plant and Barbuti met Hoffman
and O'Neill at Hoeffner's Hotel near Belmont Park and some
talk was had in relation to a Stutz automobile owned by Hoff-
man and one Salano and registered in the name of Salano's
wife. Plant wanted to trade his Chevrolet car for it, but
Hoffman would not trade even, but wanted to bepaid $500,
which he claimed was the difference in value between the two
cars. During this talk it was stated that the Stutz car was
insured against theft for $1,800. It was then proposed, either
by Plant or Hoffman, that a pretended theft of this automobile

be arranged, the car turned over to Plant and the insurance collected. Plant was to give Hoffman his Chevrolet car in exchange and Hoffman to trade that car for Barbuti's Buick car. The arrangement was not completed that day, but the People claim it was completed at Ellison's on the day of the O'Neill examination. O'Neill testified that before the examination he saw one Herbert S. Harvey, known as Sheriff Harvey, and that at the examination he asked Plant if he had seen Harvey and Plant said " yes," and that he (Plant) was there to protect him (O'Neill) and that he would be discharged. This was the situation when the conversation occurred at Ellison's. Subsequently O'Neill made a statement before the magistrate that he had bought the automobile in question from a man named Griffith and produced a bill of sale. Before he was discharged, Plant spoke in his behalf and said he thought O'Neill had paid for the car, and it was all right so far as he was concerned.

The only witness as to the conversation at Ellison's was Hoffman, who testified as follows: " After we got to Ellison's probably a quarter past twelve we sat at a table, the three of us together, Tom Barbuti, Carman Plant and myself, and Plant says, ' What are you going to do about this car, the Stutz car? Change the motor number and turn it over to me and make an even trade on the Chevrolet?' I said that would be all right, I would trade that way if I can collect the insurance and have the motor number changed. Get a new license out in Carman Plant's name. So I agreed to swap for the Chevrolet. Tom Barbuti said, ' How will you swap with me for my old Buick?' I said, ' If I am going to collect the insurance, I will make an even trade.' He said, ' When can you have the car?' I said, ' As soon as Carman Plant gets the Stutz you can take the Chevrolet and I can take the Buick.' * * * We arranged that Mr. Salano was to go to New York in front of Reisenweber's with the Stutz car. O'Neill

was to come and steal it from him and take it to Plant's house the same night. Barbuti was to be there at Plant's house when the Stutz came in and he was to have the Chevrolet and give his Buick car to O'Neill." The Stutz car " wasn't stolen until after it was stolen from Salano. * * * I said to Plant, ' You know this is à stolen car after you get it. After the car is stolen from Salano it is a stolen car and you are taking a chance on it.' He said, ' We are both detectives and we can overcome that chance.' "

It is apparent that this evidence could have but one purpose, and that was to prove guilty knowledge. Did the evidence come within the rule permitting the proof of other crimes to establish guilty knowledge? In People v. Molineux (168 N. Y. 264, 297), in discussing this question, the court said: " So in a case where the defendant is charged with having received stolen property, guilty knowledge is the gravamen of the offense and *scienter* may be proven by other previous similar acts," citing Commonwealth v. Johnson (133 Penn. St. 293) ; Coleman v. People (58 N. Y. 555) ; Copperman v. People (56 id. 591), and People v. McClure (148 id. 95). In the Coleman case the evidence was of a stealing by the same persons from whom the accused was charged with receiving the iron mentioned in the indictment, from the same owners and prosecutors, of iron of a similar description and like kind, but a short time before the transaction under investigation. In the Copperman case it was said " that courts should be cautious in receiving evidence of outside facts upon that question [guilty knowledge], and that all facts which do not directly bear upon the question should be excluded." Also, " It is a general rule, and one that should be strictly observed, that it is incompetent upon the trial for one offense to prove that the accused has committed another not connected with it. Nor can particular acts of criminality or immorality not connected with the facts constituting the crime for which the

accused is being tried be thrown into the scale against him,. to prejudice the jury or create a probability of guilt." In that case the facts proven consisted of thefts by the same person from the same person, and the sale of the goods to the defendant at an inadequate price and the pawning of some of the goods and the purchase of the pawn tickets by the defendant. Likewise the evidence in People v. McClure (*supra*) showed the receipt of other stolen property, stolen at the same time and by the same person. Numerous other cases involving the crime of criminally receiving stolen property might be cited, in all of which the evidence admitted related to the receipt from the same thief of other stolen property. In none of those cases, however, nor in any case cited by the very astute and learned counsel for the respondents, upon the trial of an indictment for the criminal receipt of stolen property, has proof been permitted of the commission of any crime other than the criminal receipt of stolen property. In this case, however, the proof admitted proved an entirely separate and distinct crime. The Stutz car belonging to Hoffman and Salano was not to be stolen. It was to be taken with the consent of the owners and they were to induce the insurer to pay them the amount of the policy upon the false claim that the automobile had been stolen. O'Neill, however, could not have been prosecuted for larceny for taking the car, because he took the car with the consent of the owners. He had no intention of depriving the true owners of their property; he was merely delivering it according to their instructions. The crime contemplated was not against them, but against the insurer. As the evidence did not show the receipt of other stolen property, it should not have been admitted upon the trial of Plant. Having been admitted, the question still remains, was it material. If by "material" is meant persuasive, there can be no doubt that it answers that test. I think something more is meant by the term "material matter" as used in the statute. I can imagine a matter so

trivial, so unsubstantial, as to have no probative force and, therefore, not a "material matter." Evidence, to be material, must, in addition to having probative force or persuasive character, be relative to the issue or properly material. The evidence must properly tend to establish some fact at issue upon the trial, and not merely to disparage the defendant when the issue of his character is not presented. In the discussion in some of the cases it is stated that if the evidence is admitted, although erroneously, if it might have influenced the jury, perjury may be predicated thereon, but the actual decisions, however, do not go so far. "Material" and "relevant" are interchangeable terms. (People v. Courtney, 94 N. Y. 490, 494.) "The test is, was the evidence such as apparently conduced to support an hypothesis logically pertinent to the issue?" (Whart. Crim. Law [11th ed.], § 1541.) "The test is whether the statement could properly have influenced the court which was investigating the bastardy proceeding upon any question which was before it for its determination." (People v. Moris, 155 App. Div. 711, 712.) The definition of "materiality" in Bouvier's Law Dictionary (Vol. 2 [Rawle's Rev.], p. 341) reads as follows: "The property of substantial importance or influence, especially as distinguished from formal requirement. Capability of properly influencing the result of the trial." "Evidence offered in a cause, or a question propounded, is material when it is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case." (McAdam, J., in Porter v. Valentine, 1 Misc. Rep. 213, 215, citing Black Law Dict.) People v. Brill (100 Misc. Rep. 92) involved a charge of perjury, the defendant having sworn falsely in a civil action that he did not sign a certain paper. Upon an appeal in the civil action this testimony was held to be immaterial and the judgment was reversed. Although the evidence was sufficiently potent to produce an

erroneous result in the civil case, in the criminal action it was held not to be material as it could not have *properly* influenced the result. The question presented in People v. Teal (*supra*) is thus stated at the very beginning of the opinion: "Can a person be convicted of attempted subornation of perjury, upon evidence which would not support a conviction upon the charge of perjury, if the attempt had been successful?" It was attempted in that case to induce a witness to give testimony from which the inference could be drawn that the defendant was guilty of an act of adultery separate and distinct from the one of adultery charged in the complaint. That such testimony would have been persuasive there can be no doubt, but the court held that was not enough. It must be material to the issue presented by the pleadings. The judgment of conviction was reversed upon the ground, as stated at the beginning of the opinion, that the evidence if given upon the trial of the action would not support a charge of perjury. That case is closely analogous to this. In this case proof as to a separate and distinct crime was admitted. In the Teal case it was proposed to offer evidence of a charge separate and distinct from that alleged in the complaint. In neither case did the evidence have any legitimate tendency to prove any issue in the action. As the testimony upon which the alleged perjury is based was not material, the judgment should be reversed and the indictment dismissed.

The indictment charged that the alleged false testimony was material and the burden of proving this allegation was upon the People. The determination of the question was for the court, and the court decided it, held the testimony material and so charged the jury. To establish the materiality of the evidence it was necessary to offer in evidence the indictment of Plant and the testimony given upon that trial as to the conversation at Ellison's Hotel. For the purpose of establishing the fact that this conversation was testified to upon the trial

of Plant, the People were permitted to read in evidence not only the evidence given by Hoffman as to that conversation, but as to other occurrences, and all of the testimony of O'Neill although he was not present at this conversation and did not testify in relation to it. To the reading of the testimony of O'Neill the defendant duly objected and, when the objection was overruled, excepted. The sole result of this ruling was to place before the jury the fact that this witness had testified to the same effect before, and thus to corroborate himself by the aid of his previous testimony. This was clearly erroneous. (People v. Jung Hing, 212 N. Y. 393.)

Hoffman testified that when O'Neill had a Buick car which the defendant let him have, the defendant called him to one side and said: "Listen, Hoffman, this is a stolen car. I got it from Jersey. I had it eighteen months. I think it is O. K. by now. You won't have to worry about it." The defendant duly moved to strike this testimony out, and when the motion was denied, excepted. This was undoubtedly erroneous. It proved an entirely separate and distinct crime. (People v. Sharp, 107 N. Y. 458; Copperman v. People, 56 id. 593; People v. Molineux, 168 id. 291.)

The prosecution also proved the receipt by Plant of the stolen automobile for which he was on trial at the time it is claimed the defendant committed perjury. This was testified to with great circumstantial detail, including Plant's request that the stolen car be obtained for him and the price he was to pay and the fact that that was the car involved in the Plant trial. This was testified by both Hoffman and O'Neill. Although this was not objected to and no exception taken, I think it was too clearly prejudicial to be overlooked. The question of Plant's guilt or innocence was not an element in this case. The defendant might have committed perjury upon the trial of an innocent man as well as a guilty one. The parties here concerned were, however, close to each other.

4

Plant was the county detective and the defendant a crime investigator under him. The inference would be natural that defendant was guilty if Plant was.

As we have already indicated that the judgment of conviction should be reversed and the indictment dismissed, there seems to be no occasion to refer more in detail to other matters which, although erroneous, can only result in a new trial. From the whole case, including the condition of the record and the manner in which the same was made up, making the accuracy of the record on appeal doubtful, we are of the opinion that the ends of justice require that the judgment herein should be reversed. (Code Crim. Proc. § 542.) We have examined the facts but are unable to certify that there is no error therein.

The judgment of conviction should be reversed and the indictment dismissed.

KELLY, P. J., MANNING and KAPPER, JJ., concur; RICH, J., dissents and votes to affirm.

Judgment of conviction reversed upon the law and the facts, and indictment dismissed upon the law.