THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LLOYD P. DODGE, PAUL GREENE and THOMAS KEEGAN, Appellants.

Second Department, March 3, 1961.

*James V. Fallon* (*Westerbeke, Fallon & Schrader*), for Lloyd P. Dodge, appellant.

*Gordon M. Lipetz* for Paul Greene, appellant.

*William Power Maloney* for Thomas Keegan, appellant.

*Edwyn Silberling, Special Assistant Attorney-General,* for respondent.

NOLAN, P. J.   The defendants appeal from judgments of the Extraordinary Special and Trial Term of the Supreme Court, Suffolk County, convicting each of them of conspiracy (Penal Law, § 580) to commit the crime of subornation of perjury in the first degree (Penal Law, § 1632).

Defendants were jointly tried on an indictment which, in its first count, charged them with the crime of conspiracy as a misdemeanor; and which in 19 additional counts charged them with the separate and distinct crimes of subornation of perjury in the first degree, in violation of section 1632 of the Penal Law.

Prior to the trial, counts 3, 4 and 6 of the indictment were dismissed by order of this court entered on May 26, 1960.   During the course of the trial, counts 2 and 16 were dismissed, and the 11 counts numbered 5, 7, 8, 9, 10, 11, 13, 17, 18, 19 and 20,

were reduced to charges of *attempts* to suborn perjury. As finally submitted to the jury, the case consisted of count 1 charging conspiracy, counts 12, 14 and 15 charging subornation of perjury in the first degree, and the said 11 counts charging attempted subornation of perjury in the first degree. The jury returned a verdict of guilty against all defendants on the one conspiracy count and a verdict of not guilty on all the other counts submitted.

The indictment on the conspiracy count on which defendants were convicted, accused them of conspiracy, between July and December, 1955, to suborn perjury in connection with property owners' petitions to obtain relief from the restrictive provisions of the Building Zone Ordinance of the Town of Brookhaven; the petitions having been prepared by defendants who were lawyers practicing law as partners.

A general building zone ordinance had been enacted by the town in 1937. That ordinance was amended extensively on April 18, 1954 (such amendment being hereafter referred to as the first amendment). Under the amended ordinance the minimum frontage of building lots was increased from 50 feet in C residential districts and 40 feet in D residential districts to 75 feet at the building line in both districts; and the minimum area of such lots was increased from 5,000 and 4,000 square feet respectively to 9,000 square feet. As the result of complaints that these and other substantial changes were causing hardship and financial loss, the Town Board, on May 25, 1954, after a public hearing, again amended the ordinance by adding to it another section numbered 1711C (this amendment being hereafter referred to either as the second amendment or as section 1711C). This section provided that the Town Board might grant relief from the zoning regulations, under circumstances therein described, upon verified petitions for such relief presented prior to December 31, 1955.

Defendants' convictions are predicated upon the prosecutor's interpretation of section 1711C — an interpretation with which the learned Trial Justice agreed and with which defendants are in complete disagreement.

Since defendants were indicted for a conspiracy to suborn perjury in the first degree, and since it was conceded that because of the lapse of time there could be no prosecution for conspiracy to suborn perjury in the second degree even if the commission of that crime could be established, it was essential for the prosecutor to prove, beyond a reasonable doubt, that defendants had willfully conspired to induce or procure their clients, for whom they had prepared and presented petitions for relief, to

commit perjury with respect to a material matter in connection with such petitions.

Section 1711C (the second amendment) contained a preamble reading as follows:

'' Whereas the Building Zone Ordinance of the Town of Brookhaven was extensively amended by an amendment effective the 18th day of April, 1954, and

'' Whereas such amendment increased the minimum size lot areas and widths in all residential districts, and

'' Whereas the Planning Board of the Town of Brookhaven had prior to April 18, 1954, approved many subdivision plats which plats met all requirements of the Building Zone Ordinance as then constituted, and

'' Whereas the owners and developers of the lands so mapped may have expended time and moneys in preparing said plats, in laying out the lands in accordance therewith and in promoting the sales of and in selling lots as shown thereon, and

'' Whereas the character of the area surrounding and including such mapped land may have heretofore been established, and

'' Whereas the Town Board of the Town of Brookhaven is of the opinion that in such instances it would be inequitable to require adherence to the standard established by the Building Zone Ordinance as amended on April 18, 1954 ''.

Section 1711C then provided in its '' enactment clauses '' for the granting of relief, as follows:

'' BE IT ORDAINED by the Town Board of the Town of Brookhaven, Suffolk County, New York, that the Town of Brookhaven Building Zone Ordinance read as follows:

'' Whenever a subdivision plat showing premises thereon which are within the unincorporated area of the Town of Brookhaven shall have been duly, tentatively or finally approved by the Town of Brookhaven Planning Board in accordance with its regulations, and whether or not such subdivision plat shall heretofore have been filed in the office of the Clerk of the County of Suffolk, the Brookhaven Town Board may, upon verified petition duly made by the record owner thereof and in form satisfactory to the Town Board, vary and adjust the required lot frontage, lot area, size of buildings and yard areas of the respective lots and plots shown upon such subdivisions, plot or portion thereof; provided however that the Town Board shall after a public hearing determine that the owner of the premises has theretofore prosecuted and will thereafter diligently and in good faith prosecute, the proceedings relating to the final

approval thereof by the Town of Brookhaven Planning Board. No petition for such relief shall be made after the 31st day of December, 1955.''

In addition to the foregoing, the enactment clauses of the second amendment also prescribed certain standards which the Town Board were required to observe in granting relief; such clauses required certain determinations to be made by the board before approval of an application; and such clauses limited the extent of any variance which might be granted by the board so as to forbid the use of lots '' smaller than those established by the Building Zone Ordinance prior to the amendment of April 18, 1954, for the particular district in which the premises are located.''

In compliance with the applicable Town Law provisions (§§ 264, 265), the Town Board caused publication to be made of the notice of the public hearing upon this second amendment (§ 1711C) as proposed. The notice, as published, included only the substantive provisions or '' enacting clauses '' of the amendment as heretofore quoted, which provided for the granting of relief. The preamble clauses of the amendment were neither published nor referred to. Consequently, such published notice failed to notify the owners and other persons interested in the purchase and development of property within the town's unincorporated area, that the preamble clauses would be included in the proposed second amendment (§ 1711C) or would become part of it when finally enacted.

The prosecutor interpreted the ordinance (as last amd. by § 1711C) to mean that if, prior to April 18, 1954 (the date of the first amendment), owners and land developers had expended time and money in the development of their lands in reliance on the then existing ordinance, such owners, and such owners only, would be eligible to apply for relief from the restrictions imposed by the provisions of the first amendment; and that it was therefore necessary for applicants for relief to establish that they had owned their land prior to April 18, 1954, and had expended money in its development prior to said date.

Defendants, on the other hand, did not interpret the ordinance as limiting relief to owners who had acquired their property and who had spent money on its development prior to April 18, 1954, and contended that it was not material to an application for relief that a petitioner should allege or establish such ownership or development prior to the date of the first amendment to the Zoning Ordinance.

In accordance with the prosecutor's understanding of the meaning of section 1711C, which was expressed substantially as

above stated in the first count of the indictment, it was charged against defendants with respect to petitions presented by them to the Town Board, that as part of the conspiracy of which they were accused " said petitions would contain statements that the petitioners purchased their land in reliance upon the ordinance in existence prior to April 18, 1954, and expended large sums of money in developing the land and would continue to develop the land "; that said " statements were false and were known to be false " by defendants; and that they " were made so that said petitioners would appear to meet the qualifications of section 1711C and the Town Board requirements and to induce the Town Board of Brookhaven to grant relief " to the petitioners pursuant to that section. It was also charged that, as part of the conspiracy, defendants would " procure and induce the said petitioners to sign said petitions and to swear to the truth " of their contents, the defendants " knowing at the time that the contents were false." It was not charged, however, nor does the prosecutor contend, that the petitions contained any false statements other than those specifically set forth in the indictment as heretofore quoted.

If, as the prosecutor contends, the second amendment (§ 1711C) provided for relief only to owners who had purchased their property and had expended money in its development prior to April 18, 1954; and if defendants had conspired to have their clients state falsely under oath that they had so purchased and developed their property in reliance on the zoning ordinance as it existed prior to April 18, 1954, defendants were properly convicted under the conspiracy count of the indictment. On the other hand, if defendants had not conspired to procure or induce their clients to make such statements, or, if they had so conspired but such statements were not material to the applications for relief, the judgments appealed from may not stand.

It is our opinion that section 1711C as enacted did not limit relief from the restrictions imposed by the first amendment, to owners of property who had acquired it and had expended money on its development *prior* to April 18, 1954, in reliance on the zoning provisions which were then in effect. There was no such restriction in the " enactment clauses " of section 1711C, in which, by express language, it was " ordained by the Town Board " that the zoning ordinance should " read *as follows*," and which contained the only provisions intended to be added to the text of the ordinance then in effect.

On the contrary, by the language which the Town Board employed (in the enactment clauses of section 1711C), it was clearly provided that any owner of land in the unincorporated

area of the Town of Brookhaven would be eligible for relief thereunder, provided only that a subdivision plat showing his land should have been at least tentatively approved by the Planning Board, and that his petition should be made on or before December 31, 1955. We find no ambiguity whatever in the enactment clauses which authorized applications for and the grant of relief. Consequently, their scope and effect may not be limited by the provisions of the preamble (*Neumann* v. *City of New York,* 137 App. Div. 55, 59; *Thompson* v. *Wallin,* 276 App. Div. 463, 467, affd. 301 N. Y. 476; *Lederman* v. *Board of Educ. of City of N. Y.,* 276 App. Div. 527, 530, affd. 301 N. Y. 476).

Neither do we believe the Town Board intended that the preamble clauses should be construed as imposing any such limitation. The board were aware that section 1711C could not take effect until after a public hearing and that notice of such hearing was required to be published (Town Law, §§ 264, 265). Nevertheless, as has been stated, in giving notice of the hearing and of the amendatory ordinance (§ 1711C) proposed to be adopted, the board published the text of the " enactment clauses " but did not publish the provisions of the preamble. It may be assumed that by its publication the Town Board intended to give notice to property owners and other interested persons of the material provisions of the amendatory ordinance proposed to be considered at the public hearing, and would have published the preamble if they had intended to have its provisions considered as limiting the scope of the provisions contained in the body of the proposed ordinance. It may also be assumed that the board were aware that if notice of the material provisions of the proposed amendment was not given, the amendment thereafter adopted would be subject to serious question and might be declared invalid (cf. *Callanan Road Improvement Co.* v. *Town of Newburgh,* 5 A D 2d 1003; *Village of Mill Neck* v. *Nolan,* 233 App. Div. 248, affd. 259 N. Y. 596; *Village of Sands Point* v. *Sands Point Country Day School,* 2 Misc 2d 885, affd. 2 A D 2d 769).

We think it is also reasonable to assume that if the Town Board had intended to limit relief to owners who had purchased and developed their property prior to April 18, 1954, they would have said so explicitly and would have required petitioners for relief to state such facts in their petitions. Nowhere in the ordinance as amended by section 1711C was there any requirement that a petition for relief should contain a statement that the owner had purchased his property prior to April 18, 1954, or had spent money thereon in reliance of the zoning regulations

in effect prior to such date. The amended ordinance simply provided that the petition for relief should be " in form, satisfactory to the Town Board," and the evidence established that the Town Board did *not* require statements in the petitions presented as to ownership of land or expenditure of money prior to the effective date of the first amendment of the zoning ordinance. Regulations issued by the Town Board " Respecting Applications under Section 1711C of the Building Zone Ordinance," set forth in detail the board's requirements with respect to the contents of petitions for relief. There was no requirement that petitioners should state the date of acquisition of their property or that they had spent money on its improvement. They were required to state, *inter alia*, the relief prayed for and the reasons why they desired relief.

It is clear, therefore, that it was not necessary for property owners, who sought relief pursuant to section 1711C (from the Zoning Ordinance as amd. April 18, 1954), to state in their petitions that they had purchased their land in reliance upon the provisions of the ordinance in existence prior to April 18, 1954 or had expended money in developing the land and would continue to develop it. Neither was it necessary for them to establish such facts in order to obtain relief.

We are unable to say, however, that such statements, if made, would have been immaterial as a matter of law. The test is whether such statements, if made, could properly have influenced the Town Board upon any question which was before them for determination (*People* v. *Moris,* 155 App. Div. 711, 712; *People* v. *Barbuti,* 207 App. Div. 285, 290). Section 1711C was enacted to give relief from the new zoning regulations (as added by the first amendment), to property owners affected by them; and we cannot say that the Town Board could not properly have taken into consideration, in determining whether or not to grant relief, the fact that land had been purchased and money had been expended on it in reliance on the provisions of the old ordinance, even though proof of such facts was not necessary. It was for the jury to determine, on appropriate instructions, whether the statements alleged in the indictments, were made, and if they were made whether they were material (*People* v. *Clemente,* 285 App. Div. 258, affd. 309 N. Y. 890).

The jury were charged that it was their function to determine both questions, but the instructions given them practically precluded a determination that the statements which defendants were accused of conspiring to induce their clients to make, were not material. The trial court charged, in effect, that the purpose of the enactment of section 1711C was to relieve

inequities existing under the new zoning regulations for the benefit of those who had done something in reliance on the old zoning as it existed prior to April 18, 1954; that the preamble clauses were statements of the purpose and intent of the statute (§ 1711C) and were part of the statute, which was to be read as a whole, inclusive of the preamble; that all the petitions were filed for the purpose of being considered under section 1711C, and must be read and weighed in accordance with the requirements of that section; and that all requirements set forth in the preamble and in the body of the statute were material considerations and were therefore important.

Under these instructions, the jury must have understood that section 1711C required an applicant for relief from the zoning regulations to establish that he had purchased his land and spent money in developing it prior to April 18, 1954, and that if such statements were contained in the petitions they were material, in spite of the instruction also given that it was for them to determine as an issue of fact whether the statements in the petitions were or were not material. In our opinion, the charge on this issue was erroneous, and the error requires reversal.

Whether a new trial should be directed or whether the indictment should be dismissed, depends on whether the evidence was sufficient to establish beyond a reasonable doubt that defendants conspired to induce their clients to make the false statements alleged in the indictment. We have concluded that it was not.

The prosecutor attempted to establish the conspiracy charged against defendants by circumstantial evidence, asserting that a corrupt agreement could be inferred from the evidence adduced on the substantive counts, upon which defendants were found not guilty. It was the prosecutor's theory that the conspiracy was established by proof that on behalf of their clients defendants prepared and presented 18 petitions for relief which were similar in form and content, and which contained false statements that the petitioners had purchased their property in reliance on the Zoning Ordinance in existence prior to April 18, 1954, and had expended large sums of money in developing the land and would continue to develop the land.

One of the 18 petitions presented (the Dresner petition) stated: "That petitioner purchased the premises in reliance upon the zoning ordinance as it existed prior to the change in April 1954." It was established that the land described had been purchased prior to April, 1954.

A second petition stated that petitioner had "acted in reliance upon zoning ordinances as they existed prior to the change in April 1954." The act or acts performed by the petitioner were not described, and concededly, prior to April, 1954 he had purchased a portion of the property with respect to which relief was requested.

A third petition stated that the petitioner purchased the premises "sometime prior to the change in [the] zoning ordinance * * * relying upon the zoning ordinance as it existed prior to April 1954." These statements were false, but in our opinion the evidence with respect to this petition was insufficient to establish a conspiracy between defendants to induce the false statements.

The remaining 15 petitions were practically identical in form and content. Each stated the name and address of the petitioner and that he was the owner of the property described. They contained descriptions of the property, and referred to certain maps, which showed the lots thereon as having a minimum depth of 100 feet, and requested a variance so that the minimum area for each lot "upon which a building permit will be issued" would be reduced from 9,000 square feet to 7,500 (or 7,800 or 8,000) square feet. They then contained statements of which the following are typical:

"5. That if the relief requested is granted, the petitioner will be in a position to continue an orderly development of the premises and avoid the necessity of creating odd parcels of land in various locations which would not be sufficiently large to erect any building upon.

"6. That petitioner purchased premises in reliance upon the zoning ordinance then in existence and upon the understanding that it would be possible for petitioner to build upon parcels having a frontage of 75 feet. That in reliance upon such, petitioner has expended large sums of money.

"7. That if the relief requested is granted, the petitioner will at all times be conforming to all phases of the present minimum zoning requirements except the requirement as to the number of square feet for each building plot. The only variance requested by petitioner is to permit him to secure building permits on lots having a frontage of 75 feet and a minimum area of 7500 feet and this request is made only because it is an old file map and petitioner cannot change it and provide for a sufficient depth in compliance with the zoning ordinance as amended in April 1954."

No date of purchase of any of the land described was stated in any of these 15 petitions, nor did any of these petitioners

state that he purchased the land in reliance upon the zoning ordinance in existence prior to April 18, 1954. No petition stated that money had been expended on the development of the land involved, except that in one instance the petitioner stated that he had expended money in the development of the " area " relying on the previous zoning ordinance. Neither did the petitions state that petitioners would continue to develop the land. Other information which might have been expected to be included in such petitions was not given. The statements made were equivocal and the information contained in the petitions may have been insufficient without further proof to warrant relief under the ordinance.

The prosecutor claims that information as to material facts was purposely omitted from all the petitions for the purpose of deceiving the Town Board. Whether information was purposely omitted and, if so, the reason therefor need not be decided. Defendants were not accused of a conspiracy to obtain relief for their clients on petitions which did not state essential facts, nor does the prosecutor seek to sustain defendants' conviction on any such theory.

The prosecutor asserts that the statement in the petitions that petitioner purchased the premises " in reliance upon the zoning ordinance then in existence " and with the understanding that it would be possible to build upon parcels having a frontage of 75 feet, was false because it conveyed and was intended to convey only one meaning, namely, that the land was purchased prior to April 18, 1954. We are unable to agree that such intent or meaning was established.

In the first place, the petitions upon which the prosecutor relied to establish the conspiracy did not state that the land had been purchased prior to April, 1954; and if defendants, in preparing the petitions, had intended to convey the meaning that it had been so purchased in reliance on the former zoning regulations, it is difficult to understand why it was also stated that the petitioners understood that it would be possible to build upon parcels having a frontage of 75 feet. If the petitioners had owned the land, prior to April 18, 1954, they could have built on parcels having a frontage of 50 feet in one of the building zones involved and a frontage of 40 feet in the other, and that fact was, of course, known by the Town Board.

Neither do we agree that the statements contained in the petitions with respect to expenditure of money and development of land were equivalent to statements that petitioners had expended money in the development of the land and would continue to develop it.

It is also difficult to understand, if defendants intended that the petitions should convey the meaning that applications for relief were made because the property involved had been purchased before April 18, 1954 and because money had been spent in its development relying on the zoning regulations then in effect, why it was stated (in 17 out of the 18 petitions) that relief was requested *only because* of the difficulties which the petitioners claimed with respect to the " old file " maps referred to in the petitions.

The petitions were by no means models of pleading, and it is impossible to determine precisely what meaning the draftsman intended to convey by some of the statements included in them. It may not be held, however, that the meaning ascribed to them by the prosecutor was established beyond a reasonable doubt. Actually, what was established was, not that the petitions contained the statements alleged in the indictment to have been included in them, but that they did not contain such statements.

It has been argued that the petitions should be read as containing the false statements alleged to have been made because the ordinance required proof of such facts as a prerequisite to the grant of relief, and the petitions were presented pursuant to the ordinance. As we have stated, the ordinance did not require such proof; but even if it did, a failure to make the statements alleged to have been made would not have constituted perjury. Perjury is not committed by failing to make a statement of a fact, no matter how relevant or material such statement, if made, might be to the subject matter in hand, and no matter how mandatory the rule might be requiring such statement to be made as a prerequisite to the accomplishment of the purpose of an affidavit (*People* v. *French,* 134 Cal. App. 694). It is to be noted that with respect to these same petitions the jury did not find the evidence sufficient to establish the charges of subornation or attempted subornation of perjury submitted to them under other counts of the indictment. In our opinion the evidence was also insufficient to establish the conspiracy of which defendants were convicted.

In view of that conclusion we find it unnecessary to discuss the other arguments advanced for reversal.

The judgments of conviction should be reversed, on the law and the facts, and the indictment should be dismissed.

KLEINFELD, CHRIST and PETTE, JJ., concur with NOLAN, P. J.; BELDOCK, J., concurs in the result.

Judgments of conviction reversed on the law and the facts as against all defendants and the indictment dismissed.