THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* MICHAEL PERNA, Respondent.

Fourth Department, February 20, 1964.

*George R. Blair, District Attorney* (*Thomas Daley* and *Irma R. Thorn* of counsel), for appellant.

*Condon, Klocke, Ange, O'Donnell & O'Brien* (*John W. Condon, Jr.* and *Grace Marie Ange* of counsel), for respondent.

Bastow, J. In March, 1962 a Grand Jury sitting in Erie County returned an indictment charging defendant in each of eight counts with the crime of perjury, first degree. After an order had been made on defendant's motion granting him an inspection of the Grand Jury minutes a further motion was made to dismiss the indictment. The motion was granted and the People appeal. In dismissing the indictment the court made no written or oral statement so we do not know by what reasoning the decision was reached.

Defendant owned certain realty in the City of Buffalo which he had purchased from his son-in-law, Frank Pusatier, for $10,000. No consideration passed except that defendant gave Pusatier a promissory note for $10,000. On June 13, 1961, Pusatier and another were apprehended inside of the building while attempting to start a fire. The building had been insured by defendant for $24,000. Pusatier was charged with the crime of attempted arson.

Subsequently, a Grand Jury commenced an investigation of the circumstances surrounding the attempt to burn the building. For some three months law-enforcement officials sought defendant to subpoena him before the Grand Jury. He finally appeared before that body in January, 1962 — some seven months after the claimed attempted arson.

Defendant testified that during the months of June, July and August, 1961 he was sojourning at the home of a friend in the Buffalo suburb of Angola. He read and knew at the time of the attempted burning of his building. He admitted journeying to the City of Buffalo to visit the home of his daughter. He persistently denied, however, that he was staying at his home. It thus becomes apparent from reading the Grand Jury minutes that the investigating body had certain definite targets including where defendant was on the 13th of June,

and the reasons for his departure and long absence from his home thereafter. Defendant, as has been stated, painted a word picture to the Grand Jury that he was sojourning with his friend near the lake front during the warm Summer months.

Defendant was married and crucial to his account of his Summer activities was the whereabouts of his wife. Early in his examination he had answered in the affirmative to the question as to whether he lived with his wife. Defendant then volunteered '' My wife was in Florida at the time because her father had a stroke and she was taking care of her father.'' Later in his questioning defendant admitted he was in Buffalo the day after the fire but when asked if he was home replied '' No, I wasn't staying at home because my wife wasn't there.'' At another point defendant testified that his wife went to Florida the latter part of May or in early June.

To avoid needless repetition, it is sufficient to state that some 10 or 12 times during the course of his Grand Jury examination defendant either directly testified that his wife was in Florida during the Summer months of 1961 or sought refuge in the claimed fact that she was in Florida to explain why he did or did not do certain acts. There was a wealth of proof before the Grand Jury to present a question of fact as to the truthfulness of these statements. Defendant's wife, son, daughter and daughter-in-law testified before that body. The wife testified without equivocation that she went to Florida in August, 1961. In answer to direct questions she stated that she was not in Florida in June or July of 1961. During those months she was at her Buffalo home with trips from time to time to visit her father in the nearby community of Orchard Park.

The Grand Jury selected eight excerpts from defendant's several statements that his wife was absent from the Buffalo home and in Florida during June and July, 1961 and they are the basis for the counts in the indictment charging that Perna willfully testified falsely to propounded questions material to the investigation. There can be no doubt from the foregoing recital that a triable issue was presented as to whether the statements were true or false. It follows that the indictment must have been dismissed upon a finding that the testimony was not material.

Prior to 1935, the question as to whether, in a prosecution for perjury, the testimony, the falsity of which was charged, was material or not was one of law for the court. (*People ex rel. Hegeman* v. *Corrigan,* 195 N. Y. 1, 9.) In 1935 '' materiality '' was removed from the general definition of perjury and the

crime was divided into two degrees (L. 1935, ch. 632). Section 1620-a of the Penal Law defines perjury, first degree, as perjury as to any material matter while perjury, second degree (§ 1620-b) is the commission of perjury under circumstances not amounting to perjury in the first degree. By chapter 93 of the Laws of 1936 perjury, second degree was made a misdemeanor (§ 1633).

These amendments were considered in *People* v. *Samuels* (284 N. Y. 410, 414) where it was said: " The section as amended defines one crime, perjury. To constitute that crime, materiality is no longer of the essence. Its existence may warrant an indictment for perjury in the first degree, but it does not constitute a different crime, so as to make such an indictment requisite. The degrees of the crime are not mutually exclusive. Notwithstanding the negative definition of perjury in the second degree, swearing falsely to an immaterial matter is in a legal sense necessarily contained within a description of false swearing to a material matter."

In view of these amendments doubts remained as to whether the question of materiality was solely one of law for the court (as had been the rule prior to the 1935 amendment) or one of fact for the jury. These doubts were resolved by *People* v. *Clemente* (285 App. Div. 258, affd. 309 N. Y. 890). The applicable rule was thus stated by the Appellate Division (pp. 261–262): " Apart from authority, we cannot agree with the District Attorney in his argument addressed to the principle of the matter, contending that the question of materiality is obviously a legal question for the court and one which is beyond the jury's province and capabilities. * * * What the law really does, in the interest of a fair trial and reasonably controlled trial, is to vest in the court a preliminary power of ruling on the materiality of evidence to the end that evidence which a jury should not consider at all may be excluded from their consideration altogether. A ruling in favor of materiality means no more than that the jury may consider the evidence. Its materiality then becomes a question of fact for the jury. And certainly materiality as a substantive element of the crime of perjury is something more than materiality considered in an evidentiary ruling by the court. Materiality in such a case becomes a matter for ultimate determination by the decisional process. * * * This does not mean that the question need be posed nakedly to the jury for their determination without instructions relating their consideration of the question to the facts of the case. We make no attempt to prescribe or cir-

cumscribe the court's charge, but we are of the opinion that under an appropriate instruction the jury should be given to understand that they must consider and determine the question of materiality as an essential element of the crime, particularly in determining whether, if they find false swearing, it amounts to perjury in the first degree or perjury in the second degree.''

We may only surmise, in the absence of any oral or written statement from Special Term, that the indictment was dismissed upon a finding that the alleged perjurious statements were, as a matter of law, immaterial. This was erroneous for two reasons. First, the question of materiality is no longer one of law for the court and second, under the preliminary power vested in a trial court upon the trial to rule on the issue of materiality, as stated in *People* v. *Clemente* (*supra*), it would be incorrect to hold that the materiality of the several extracts from the defendant's testimony set forth in the indictment was not a question for a jury to determine.

In exercising the preliminary power of ruling on the materiality of this testimony to determine whether or not it should be submitted to a jury for determination it is necessary to implement certain recognized legal principles. Thus, it has been written that '' The fact that the statements related to details does not necessarily determine that they are not material and therefore that the witness stating them was not guilty of perjury. The test which most courts favor is whether the statement made can influence the tribunal on the issue before it. Thus, a statement is usually held sufficient to support a charge of perjury if it is material to any proper matter of inquiry, and if, furthermore, it is calculated and intended to bolster the testimony of a witness on some material point, or to support or attack the credibility of the witness, or if it is a link in a chain of circumstantial evidence, or supports a conclusion or opinion of the witness. A person swearing falsely to a material fact cannot defend himself on the ground that the case did not ultimately rest on the fact to which he swore.

'' The general rule to which most courts subscribe, is that any testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and wilfully falsifies in giving it guilty of perjury. It is usually sufficient to constitute perjury if the false statement is collaterally, remotely, or circumstantially material, or if it has a legitimate tendency to prove or disprove some fact that is material, irrespective of the main fact at issue.'' (3 Wharton's Criminal Law and Proc. [Anderson], § 1311.)

328

Decisions in this State are in accord. (*Wood* v. *People,* 59 N. Y. 117, 123; *People* v. *Dodge,* 12 A D 2d 353, 360; *People* v. *Barbuti,* 207 App. Div. 285, 290; *People* v. *Moris,* 155 App. Div. 711, 712.) In *Barbuti* (*supra*), the court quoted with approval the following statement (p. 290): "Evidence offered in a cause, or a question propounded, is material when it is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case."

Judged by these principles the alleged false statements of defendant as to the whereabouts of his wife during June and July, 1961 present a factual issue as to their materiality. The Grand Jury, as part of its investigation of an attempted burning of defendant's building, was seeking information as to his whereabouts at the time of the alleged crime, and the reason, if any, for his absence from home then and for months thereafter. Defendant by his testimony attempted to convince the jury that he had been visiting a friend during these Summer months. To embellish his account and cast a cloak of innocence about his activities he repeatedly told the jury that his wife was in Florida caring for her sick father. While this testimony may have related to a collateral and possibly remote subject, it had a legitimate tendency to prove a fact that was material. In other words the statements could properly have influenced the Grand Jury upon a question that was before it for determination. (*People* v. *Moris, supra,* p. 712.)

Moreover, it is no defense that Perna "did not know the materiality of the [alleged] false statement[s] made by him; or that [they] did not in fact affect the proceeding in or for which [they were] made. It is sufficient that [they were] material, and might have affected such proceeding." (Penal Law, § 1624.)

The order should be reversed and the indictment reinstated.

WILLIAMS, P. J., GOLDMAN, NOONAN and DEL VECCHIO, JJ., concur.

Order unanimously reversed on the law and indictment reinstated.