Lawrence J. Tonetti, J.
The defendant brings this omnibus motion for dismissal of the indictment, discovery and inspection and a bill of particulars. This court, having carefully read the Grand Jury minutes, decides the motion as hereinafter indicated.
facts
The defendant, a vendor of meat and produce, stands indicted for two counts of perjury committed while testifying before the Nursing Home Grand Jury of Bronx County on April 30, 1976. Prior to this date on July 15, 1975, the defendant had engaged in a conversation with one Ira Feinberg in Emerson, New Jersey, during which conversation Mr. Feinberg was wired to record its contents. The Special Prosecutor’s office had informed local officials in New Jersey that a wiring would occur in their jurisdiction although no informa *243 tion was transferred concerning either subject matter or the individual involved.
The defendant was brought before the Grand Jury and informed that the scope of its investigation dealt with possible abuses in the nursing home system in New York. Further, he was told that he would be receiving full transactional immunity (CPL 50.10) and would be immune from prosecution for all offenses encompassed in his testimony so long as he did not commit perjury.
Questioning before the Grand Jury concerned defendant’s business transactions; first, in the various jurisdictions of this State, and then moved on to cover his dealings with nursing home operators in Connecticut, New Hampshire and finally New Jersey. When the questioning began dealing with New Jersey, the defendant asked to and was allowed to consult with his lawyer outside the Grand Jury room. When he returned he objected to the questioning on the grounds that it was not relevant to the Grand Jury’s inquiry. He was then told by the Special Prosecutor that it was not his function to determine what was relevant and he subsequently continued to answer. It is these answers juxtaposed against the tape recording that form the basis of the perjury indictment.
I — MOTION TO DISMISS
The defendant alleges several grounds for dismissal of the indictment, some of which may be handled summarily and some requiring thorough analysis.
A. SUFFICIENCY OF THE GRAND JURY EVIDENCE AND INSTRUCTIONS
This court has read the Grand Jury minutes and finds sufficient evidence to support an indictment (CPL 210.20, subd 1, par [b]). Further, the Grand Jury was given adequate recorded instructions on the law to determine if an indictment was warranted (CPL 190.25, subd 6).
B. JURISDICTION AND MATERIALITY
At the outset it must be noted that if the defendant committed perjury he did so before the Bronx County Grand Jury which would therefore clearly have jurisdiction to return an indictment. Secondly, the tape recording made prior to the Grand Jury appearance indicated that the defendant had been *244 involved in kickback schemes in this State. Given this fact, it cannot be maintained that the Grand Jury was on a fishing expedition or interested solely in a perjury indictment (see Brown v United States, 245 F2d 549). Evidence had been developed to indicate nursing home misconduct in this jurisdiction and inquiry regarding such misconduct was certainly within the purview of this Grand Jury’s investigative scope.
The defendant also contends that the indictment should be dismissed because the questions asked were not material to that body’s investigation. However, materiality is not determined solely by the effect the question and answer may have in determining guilt or innocence. A question may be material to a subject under investigation even if it relates to some collateral or circumstantial element in the case (People v Perna, 20 AD2d 323; Wood v People, 59 NY 117). Here the questions relating to New Jersey may be material to the Grand Jury’s assessment of the defendant’s credibility with regard to his statements concerning New York nursing homes. In any event, the courts of this State have consistently held that materiality in a perjury prosecution is a jury question (People v Dunleavy, 41 AD2d 717; People v Perna, supra). Finally, the issue of materiality is being raised here prematurely. The CPL (210.20, subd 1, par [b]) allows for dismissal of an indictment only where the evidence fails to establish the crime charged or any lesser included offense. As perjury in the third degree does not require a showing of materiality, a failure of evidence in this area would not constitute a valid ground for dismissal.
This court has examined the recitation of materiality in the preamble to the indictment and finds that it suffices to comply with CPL 200.50 (subd 7).
C. FIFTH AMENDMENT RIGHTS
The defendant contends first that he was a target of the investigation and compelling his testimony violates his privilege against self incrimination. Secondly, he contends that his Fifth Amendment rights were violated because the immunity offered was not coextensive with the privilege waived (Counselman v Hitchcock, 142 US 547).
The first point is easily resolved. This court concludes factually that the defendant was not a target at the time of his Grand Jury appearance. He was called and given immunity in order to develop evidence concerning the nursing *245 homes he serviced as a vendor. Even assuming, arguendo, that he was a target, this is no protection from an indictment for perjury before a Grand Jury (People v Tomasello, 21 NY2d 143).
The second point requires fuller analysis. The defendant argues that while the immunity given would protect him from a New York prosecution, by compelling testimony concerning his actions in New Jersey, the Grand Jury forced him to make statements which could be used to prosecute him in New Jersey, regardless of any grant of immunity given here. Consequently, the defendant contends that the immunity given was not coextensive with his privilege against self incrimination, and his Fifth Amendment rights were violated (Counselman v Hitchcock, supra).
Cases dealing with multijurisdictional immunity issues emanate universally from the Federal courts logically because multistate prosecutions are generally lodged in that forum. The lead case in the area is Murphy v Waterfront Comm. (378 US 52). There, both New York and New Jersey granted immunity through the Port Authority, an entity having bi-State authority. The defendant still refused to answer questions, maintaining that the immunity granted would not protect him from a Federal prosecution based on his testimony and thus his Fifth Amendment right against self incrimination was being violated. Prior to Murphy, the rule was that nonimmunizing sovereign could use the testimony compelled by another jurisdiction. The Murphy case changed this result. The court stated:
"The foregoing makes it clear that there is no continuing vitality to, or historical justification for, the rule that one jurisdiction within our federal structure may compel a witness to give testimony which could be used to convict him of a crime in another jurisdiction” (p 77).
"We hold that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law” (pp 77-78).
"We hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We con- *246 elude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of the compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity” (p 79).
In Kastigar v United States (406 US 441, 456) Justice Powell summarized the holding in Murphy: "Since New Jersey and New York had not purported to confer immunity from federal prosecution, the Court was faced with the question of what limitations the Fifth Amendment privilege imposed-on the prosecutorial powers of the Federal Government, a nonimmunizing sovereign. After undertaking an examination of the policies and purposes of the privilege, the Court overturned the rule that one jurisdiction within our federal structure may compel a witness to give testimony which could be used to convict him of a crime in another jurisdiction.”
The Murphy decision deals explicitly with Federal to State jurisdiction and no case known to this court, or located by counsel after extensive briefs, deals directly with a State to State immunity question. However, it is this court’s opinion that Murphy implicitly guarantees Fifth Amendment protection from compelled testimony in all jurisdictions in our Federal structure (Matter of Bianchi, 542 F2d 98). The proscriptions contained in the Fifth Amendment apply with equal force to State as well as Federal prosecution (Malloy v Hogan, 378 US 1). The logic of Murphy, to leave unfettered the investigative capacities of the various jurisdiction, is consistent with this approach. The defendant’s testimony would therefore be barred by the exclusionary rule fashioned in Murphy from incriminating use by New Jersey.
One further point must be made in this regard. The Fifth Amendment as construed by the Supreme Court provides only use immunity (Kastigar v United States, supra) while the new York immunity statute gives full transactional immunity (CPL 190.40). Therefore, while the immunity statute would provide transactional immunity here, only use immunity would be provided by the Fifth Amendment in New Jersey. This fact does not violate the defendant’s Fifth Amendment *247 rights. The defendant must only be afforded protection commensurate with the privilege displaced, and nothing broader, to meet constitutional mandates (Murphy v Waterfront Comm., 378 US 52, 100, supra). The Fifth Amendment privilege mandates use immunity in return for compelled testimony. The fact that New York voluntarily gives a broader scope of immunity does not mean a violation of privilege occurs where a defendant has only use immunity protection from prosecution in a foreign jurisdiction.
D. DUE PROCESS
The defendant alleges several grounds as violations of his due process rights sufficient to result in a dismissal of the indictment. It is alleged here that the Grand Jury was acting as a roving commission with no jurisdictional interest in the defendant’s activities and was only concerned with returning a perjury indictment. If this were true, it would be grounds for dismissal (Brown v United States, 245 F2d 549, supra; United States v Doss, 545 F2d 548). Factually, however, the tapes from New Jersey had supplied evidence that the defendant was engaged in illegal activities in this State and county before he was called before the Grand Jury. As this was the case, the Grand Jury had a field of inquiry within its authority and the calling of the defendant was a legitimate exercise of its investigatory function (Masinia v United States, 296 F2d 871).
The defendant also objects to the Special Prosecutor’s failure to inform him of the existence of the New Jersey tape before he testified. While in a proper case, where the prosecutor knows the defendant has no further information to offer, such conduct may be improper (see People v Monaghan, NYLJ, Nov. 14, 1975, p 8, col 3), in a situation such as the one presented here, there is no mandate for such disclosure (United States v Winter, 348 F2d 204; United States v Del Toro, 513 F2d 656; United States v Jacobs, 531 F2d 87). The defendant was not co-operating and disclosure would allow him to tailor his testimony to matters already known to the Grand Jury and defeat the purpose of calling him (People v Breindel, 73 Misc 2d 734, affd 45 AD2d 691, affd 35 NY2d 928). Such disclosure also jeopardizes the secrecy of the Grand Jury proceedings (People v Breindel, supra). The Special Prosecutor had a choice here of a disclosing and attempting to shake loose more important information or nondisclosures and in- *248 dieting for perjury. Whatever this court may think of the option chosen it cannot be said that due process was violated.
Further, the fact that the Special Prosecutor intentionally framed his questions broadly so as not to reveal his prior information does not alter the above result. The questions were sufficiently concise to allow the Grand Jury to make an appropriate determination of the truth or falsity of the answers (Bronston v United States, 409 US 352). The Grand Jury was properly instructed on the law and sufficient evidence was presented for the return of an indictment.
Finally, the defendant argues that his constitutional rights were violated when the Special Prosecutor misinformed him as to the scope of his immunity and then would not let him question the propriety of the questioning concerning New Jersey. No doubt exists that the Special Prosecutor after explicitly stating to the defendant that he would receive transactional immunity for all truthful answers proceeded to ask questions for which only use immunity would attach. Improper statements concerning immunity have been held sufficient to warrant dismissal (People v Masiello, 28 NY2d 287; People v Breindel, supra). Also, although the defendant had just seen his attorney, the Special Prosecutor should not have stated that only he would determine the propriety of the questions. In a proper case, the refusal to allow a defendant to see his lawyer outside the Grand Jury room may result in dismissal (People v Ianniello, 21 NY2d 418, 425).
However, the above cases, which sanction dismissal, all deal with contempt rather than perjury. In fact, if the defendant’s conduct here had been contumacious rather than perjurious, this court would be inclined to accept defendant’s arguments. However, a separate line of cases dealing with perjurious conduct leads this court to a different conclusion.
In United States v Mandujano (425 US 564, 576-577) the Supreme Court explained both the purpose and extent of perjury prosecutions.
"In this constitutional process of securing a witness’ testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. The power of subpoena, broad as it is, and the power of contempt for refusing *249 to answer, drastic as that is — and even the solemnity of the oath — cannot insure truthful answers. Hence, Congress has made the giving of false answers a criminal act punishable by severe penalties; in no other way can criminal conduct be flushed into the open where the law can deal with it.
"Similarly, our cases have consistently — indeed without exception — allowed sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry. See, e.g., United States v. Knox, 396 U. S. 77 (1969); Bryson v. United States, 396 U. S. 64, (1969); Dennis v. United States, 384 U. S. 855, (1969); Kay v. United States, 303 U. S. 1 (1938); United States v. Kapp, 302 U. S. 214, (1937).”
In Bryson (supra) the court dealt with what alternatives a Grand Jury witness has when confronted with a question that should not have been asked. "[I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government’s right to ask questions — lying is not one of them. A citizen may decline to answer the question, or answer it honestly — but he cannot with impunity knowingly and willfully answer with a falsehood” (Bryson, supra, p 72).
The courts of this State have adopted an identical position. Whether or not the defendant testified under immunity or under an invalid grant of immunity his protection extends only to the substantive crime under investigation and not to perjury committed before the Grand Jury (People v Goldman, 21 NY2d 152; People v Tomasello, 21 NY2d 143; People v Straehle, 30 AD2d 452; People v Franza, NYLJ, April 12, 1977, p 7, col 4).
Thus, the defendant having testified falsely cannot now be heard to say that the question should not have been asked or the immunity granted was insufficient. While the compulsive attitude assumed here by the Special Prosecutor is troublesome, the defendant, having just been allowed to see his lawyer, could easily have persisted in his refusal to answer and thus preserved the issue.
[Additional material omitted for the purposes of publication.]